APPEAL,CLOSED,TYPE I–FOIA

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: <u>1:23–cv–01328–BAH</u>
# *Internal Use Only*

WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS v. UNITED STATES DEPARTMENT OF JUSTICE
Assigned to: Judge Beryl A. Howell
Cause: 05:552 Freedom of Information Act

Date Filed: 05/10/2023
Date Terminated: 04/22/2024
Jury Demand: None
Nature of Suit: 895 Freedom of Information Act
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS**

represented by **Jacqueline Kutnik–Bauder**
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBA
700 14th Street NW, Suite 400
Washington, DC 20005
314–488–9044
Email: jacqueline.kutnik–bauder@morganlewis.com
*TERMINATED: 09/05/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristin Leigh McGough**
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBA
700 14th Street, N.W.
Suite 400
Washington, DC 20005
202–319–1067
Fax: 202–319–1010
Email: kristin_mcgough@washlaw.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Margaret Hart**
WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS & URBAN AFFAIRS
700 14th Street, NW
Suite 400
Washington, DC 20005
202–319–1000
Email: margaret_hart@washlaw.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James D. Friedland**

1

LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
312−876−7700
Fax: 312−993−9767
Email: james.friedland@lw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kevin H. Metz**
LATHAM & WATKINS LLP
555 11th Street, NW
Suite 1000
Washington, DC 20004−1304
(202) 637−2200
Fax: (202)637−2201
Email: kevin.metz@lw.com
*TERMINATED: 12/29/2023*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| UNITED STATES DEPARTMENT OF JUSTICE | represented by | **Stephen DeGenaro**<br>601 D Street NW<br>Washington, DC 20530<br>202−252−7229<br>Email: Stephen.DeGenaro@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| --- | --- | --- |

| Date Filed | # | Docket Text |
| --- | --- | --- |
| 05/10/2023 | 1 | COMPLAINT against UNITED STATES DEPARTMENT OF JUSTICE ( Filing fee $ 402 receipt number ADCDC−10059563) filed by WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Civil Cover Sheet, # 4 Summons on U.S. Attorney General, # 5 Summons on U.S. Attorney for D.C.)(Metz, Kevin) (Entered: 05/10/2023) |
| 05/10/2023 | 2 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS (Metz, Kevin) (Entered: 05/10/2023) |
| 05/10/2023 | | Case Assigned to Judge Beryl A. Howell. (zsl) (Entered: 05/10/2023) |
| 05/10/2023 | 3 | SUMMONS (2) Issued Electronically as to U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zsl) (Entered: 05/10/2023) |
| 05/11/2023 | 4 | STANDING ORDER. Signed by Judge Beryl A. Howell on May 11, 2023. (lcbah3) (Entered: 05/11/2023) |

| 05/12/2023 | 5 | NOTICE of Appearance by Jacqueline Kutnik–Bauder on behalf of WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS (Kutnik–Bauder, Jacqueline) (Entered: 05/12/2023) |
| 05/19/2023 | 6 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 5/12/2023. Answer due for ALL FEDERAL DEFENDANTS by 6/11/2023. (Metz, Kevin) (Entered: 05/19/2023) |
| 05/19/2023 | 7 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 5/19/23. (Metz, Kevin) (Entered: 05/19/2023) |
| 05/23/2023 | 8 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– James D. Friedland, Filing fee $ 100, receipt number ADCDC–10086895. Fee Status: Fee Paid. by WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Metz, Kevin) (Entered: 05/23/2023) |
| 05/23/2023 | | MINUTE ORDER (paperless) GRANTING plaintiff's 8 Motion for Admission *Pro Hac Vice* of James D. Friedland. Mr. Friedland may enter an appearance *pro hac vice* for the purpose of representing plaintiff in this action. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Beryl A. Howell on May 23, 2023. (lcbah3) (Entered: 05/23/2023) |
| 05/24/2023 | 9 | NOTICE of Appearance by James D. Friedland on behalf of WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS (Friedland, James) (Entered: 05/24/2023) |
| 06/01/2023 | 10 | NOTICE of Appearance by Margaret Hart on behalf of WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS (Hart, Margaret) (Entered: 06/01/2023) |
| 06/02/2023 | | RESOLVED...NOTICE of Provisional/Government Not Certified Status re 10 NOTICE of Appearance by Margaret Hart on behalf of WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS (Hart, Margaret). Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney–renewal. Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 6/9/2023. (zbaj) Modified on 6/14/2023 (zbaj). (Entered: 06/02/2023) |
| 06/08/2023 | 11 | NOTICE of Appearance by Stephen DeGenaro on behalf of UNITED STATES DEPARTMENT OF JUSTICE (DeGenaro, Stephen) (Entered: 06/08/2023) |
| 06/08/2023 | 12 | Consent MOTION for Extension of Time to *Respond to the Complaint* by UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # 1 Text of Proposed Order)(DeGenaro, Stephen) (Entered: 06/08/2023) |

| 06/08/2023 | | MINUTE ORDER (paperless) GRANTING defendant's 12 Consent Motion for Extension of Time to Respond, and DIRECTING defendant to respond to plaintiff's 1 Complaint by July 12, 2023. Signed by Judge Beryl A. Howell on June 8, 2023. (lcbah3) (Entered: 06/08/2023) |
|---|---|---|
| 06/09/2023 | | Set/Reset Deadlines: Answer to the Complaint due by 7/12/2023. (ztg) (Entered: 06/09/2023) |
| 07/07/2023 | 13 | Consent MOTION for Extension of Time to *Respond to the Complaint* by UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # 1 Text of Proposed Order)(DeGenaro, Stephen) (Entered: 07/07/2023) |
| 07/10/2023 | | MINUTE ORDER (paperless) GRANTING defendant's 13 Second Consent Motion for Extension of Time to Respond, and DIRECTING defendant to respond to plaintiff's 1 Complaint by August 11, 2023. Signed by Judge Beryl A. Howell on July 10, 2023. (lcbah3) (Entered: 07/10/2023) |
| 07/11/2023 | | Set/Reset Deadlines: Answer to the Complaint due by 8/11/2023. (ztg) (Entered: 07/11/2023) |
| 08/11/2023 | 14 | Partial MOTION to Dismiss *or, in the alternative*, Partial MOTION for Summary Judgment by UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Baime Declaration, # 4 Lilly Declaration, # 5 Text of Proposed Order)(DeGenaro, Stephen) (Entered: 08/11/2023) |
| 08/18/2023 | 15 | Joint MOTION for Extension of Time to File Response/Reply as to 14 Partial MOTION to Dismiss *or, in the alternative*Partial MOTION for Summary Judgment by WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS. (Attachments: # 1 Text of Proposed Order)(Metz, Kevin) (Entered: 08/18/2023) |
| 08/21/2023 | | MINUTE ORDER (paperless) GRANTING plaintiff's 15 Joint Motion for Extension of Time to File Response and Reply and DIRECTING the parties to adhere to the following SCHEDULING ORDER:<br><br>(1) by September 29, 2023, the plaintiff shall file any response to the defendants 14 Partial Motion to Dismiss or, *in the alternative*, for Partial Summary Judgment, and (2) by October 30, 2023, the defendant shall file any reply. Signed by Judge Beryl A. Howell on August 21, 2023. (lcbah2) (Entered: 08/21/2023) |
| 08/22/2023 | | Set/Reset Deadlines: Plaintiff To The Defendant's 14 Partial Motion to Dismiss, in the alternative, for Partial Summary Judgment due by 9/29/2023. Defendant Reply due by 10/30/2023. (mac) (Entered: 08/22/2023) |
| 09/05/2023 | 16 | NOTICE OF WITHDRAWAL OF APPEARANCE as to WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS. Attorney Jacqueline Kutnik–Bauder terminated. (Kutnik–Bauder, Jacqueline) (Entered: 09/05/2023) |
| 09/29/2023 | 17 | Memorandum in opposition to re 14 Motion to Dismiss,, Motion for Summary Judgment, filed by WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS. (Attachments: # 1 Response to Statement of Facts, # 2 Declaration of Margaret Hart, # 3 Text of Proposed Order)(Metz, Kevin) (Entered: 09/29/2023) |
| 10/24/2023 | 18 | MEET AND CONFER STATEMENT. (DeGenaro, Stephen) (Entered: 10/24/2023) |

| 10/26/2023 | | MINUTE ORDER (paperless), upon consideration of the parties' 18 Joint Status Report, DIRECTING the parties to file, by January 19, 2024, another joint status report advising the Court of the status of this matter and proposing a schedule to govern further proceedings. Signed by Judge Beryl A. Howell on October 26, 2023. (lcbah2) (Entered: 10/26/2023) |
|---|---|---|
| 10/27/2023 | | Set/Reset Deadlines: Parties Joint Status Report due by 1/19/2024 (mac) (Entered: 10/27/2023) |
| 10/30/2023 | 19 | REPLY to opposition to motion re 14 Partial MOTION to Dismiss *or, in the alternative*Partial MOTION for Summary Judgment filed by UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # 1 Response to Plaintiff's Further Statement of Material Facts)(DeGenaro, Stephen) (Entered: 10/30/2023) |
| 12/29/2023 | 20 | NOTICE OF WITHDRAWAL OF APPEARANCE as to WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS. Attorney Kevin H. Metz terminated. (Metz, Kevin) (Entered: 12/29/2023) |
| 01/19/2024 | 21 | Joint STATUS REPORT by WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS. (Friedland, James) (Entered: 01/19/2024) |
| 03/10/2024 | 22 | ORDER GRANTING the defendant's 14 Partial Motion to Dismiss or, in the Alternative, For Partial Summary Judgment. See Order for further details. Signed by Judge Beryl A. Howell on March 10, 2024. (lcbah2) (Entered: 03/10/2024) |
| 03/10/2024 | 23 | MEMORANDUM OPINION regarding the defendant's 14 Partial Motion to Dismiss or, in the Alternative, For Partial Summary Judgment. Signed by Judge Beryl A. Howell on March 10, 2024. (lcbah2) (Entered: 03/10/2024) |
| 03/11/2024 | | Set/Reset Deadlines: Parties Joint Status Report due by 3/22/2024. (mac) (Entered: 03/11/2024) |
| 03/12/2024 | 24 | CLERK'S JUDGMENT in favor of Defendant against Plaintiff.Signed by Judge Beryl A. Howell on 03/12/24. (mac) (Entered: 03/12/2024) |
| 03/22/2024 | 25 | Joint STATUS REPORT *AND EXTENSION REQUEST* by WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS. (Attachments: # 1 Text of Proposed Order)(Friedland, James) (Entered: 03/22/2024) |
| 03/22/2024 | 26 | STIPULATION of Dismissal by WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS. (Friedland, James) (Entered: 03/22/2024) |
| 03/22/2024 | 27 | MOTION for Extension of Time by WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS. (See docket entry 25 to view document). (mg) (Entered: 03/25/2024) |
| 03/25/2024 | | MINUTE ORDER (paperless) GRANTING the parties' 27 Motion for Extension of Time for the plaintiff's severed claims to be filed as separate actions or otherwise be dismissed; DIRECTING the plaintiff to file its severed individual claims in appropriate separate actions by April 19, 2024, otherwise those claims will be dismissed; DIRECTING the parties to file a joint status report by April 10, 2024, regarding the results of their negotiations; and STAYING the defendant's obligation to respond to plaintiff's 1 Complaint. Signed by Judge Beryl A. Howell on March 25, 2024. (lcbah2) (Entered: 03/25/2024) |
| 03/25/2024 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER (paperless) DISMISSING plaintiff's claim as to FOIA Request Number 2020–02603, with prejudice, pursuant to the parties' 26 Stipulation of Dismissal and Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Signed by Judge Beryl A. Howell on March 25, 2024. (lcbah2) (Entered: 03/25/2024) |
| 03/26/2024 | | Set/Reset Deadlines: Parties Joint Status Report due by 4/10/2024 (mac) (Entered: 03/26/2024) |
| 04/10/2024 | 28 | Joint STATUS REPORT by WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS. (Friedland, James) (Entered: 04/10/2024) |
| 04/10/2024 | 29 | NOTICE of Appearance by Kristin Leigh McGough on behalf of WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS (McGough, Kristin) (Entered: 04/10/2024) |
| 04/12/2024 | | MINUTE ORDER (paperless) DIRECTING plaintiff to SHOW CAUSE, by April 16, 2024, why this matter should not be dismissed, given the parties' 28 Joint Status Report advising that plaintiff "does not intend to re–file the Severed FOIA Claims at this time," JSR at 2, notwithstanding this Court's March 25, 2024, Minute Order directing "plaintiff to file its severed individual claims in appropriate separate actions by April 19, 2024, otherwise those claims will be dismissed," and considering that this Court previously dismissed all other claims in Count I and granted summary judgment in defendant's favor on Count II, *see* Order at 1, ECF No. 22; Min. Order (Mar. 25, 2024); *see also* JSR at 1–2. Signed by Judge Beryl A. Howell on April 12, 2024. (lcbah4) (Entered: 04/12/2024) |
| 04/16/2024 | 30 | RESPONSE *to MINUTE ORDER (paperless) DIRECTING plaintiff to SHOW CAUSE* filed by WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS. (Friedland, James) (Entered: 04/16/2024) |
| 04/17/2024 | | Set/Reset Deadlines: Plaintiff Show Cause due by 4/16/2024. (mac) (Entered: 04/17/2024) |
| 04/18/2024 | | MINUTE ORDER (paperless), upon consideration of plaintiff's 30 Response to Order to Show Cause ("Pl.'s Resp."); *see* Min. Order (Apr. 12, 2024) (directing plaintiff to "show cause... why this matter should not be dismissed" (capitalization omitted)), in which plaintiff states its "understand[ing] that the remaining FOIA claims comprising Count I will be dismissed" and "that the disposition of Count I as indicated above will leave no active claims in this matter and that it will be closed," Pl.'s Resp. at 1–2, DISMISSING all remaining individual claims in Count I of the Complaint. The Clerk of the Court is directed to close this case. Signed by Judge Beryl A. Howell on April 18, 2024. (lcbah4) (Entered: 04/18/2024) |
| 05/08/2024 | 31 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 22 Order on Motion to Dismiss, Order on Motion for Summary Judgment, 24 Clerk's Judgment, 23 Memorandum & Opinion by WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS. Filing fee $ 605, receipt number ADCDC–10883385. Fee Status: Fee Paid. Parties have been notified. (Friedland, James) (Entered: 05/08/2024) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS**, | |
| Plaintiff, | |
| v. | Civil Action No. 1:23-cv-01328-BAH |
| **UNITED STATES DEPARTMENT OF JUSTICE**, | |
| Defendant. | |

## NOTICE OF APPEAL

Plaintiff Washington Lawyers' Committee for Civil Rights and Urban Affairs hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the District Court's judgment entered on March 12, 2024 (ECF No. 24) and the accompanying memorandum opinion and order entered on March 10, 2024 (ECF Nos. 22, 23).

Date: May 8, 2024                          Respectfully submitted,

                                           */s/ James D. Friedland*

Kristin McGough                            James D. Friedland (*pro hac vice*)
D.C. Bar No. 991209                        IL Bar No. 6322526
WASHINGTON LAWYERS' COMMITTEE FOR          LATHAM & WATKINS LLP
CIVIL RIGHT & URBAN AFFAIRS                330 North Wabash Avenue, Suite 2800
700 14th Street, N.W., Suite 400           Chicago, IL 60611
Washington, D.C. 20005                     Tel: (312) 876-7700
Tel: (202) 319-1000                        Fax: (312) 993-9767
Fax: (202) 319-1010                        james.friedland@lw.com
kristin_mcgough@washlaw.org

*Counsel for Plaintiff Washington Lawyers' Committee*
*for Civil Rights and Urban Affairs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS, | |
| Plaintiff, | Civil Action No. 23-1328 |
| v. | Judge Beryl A. Howell |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |

**<u>ORDER</u>**

Upon consideration of defendant Department of Justice's Partial Motion to Dismiss or, in the Alternative, For Partial Summary Judgment, ECF No. 14, the related legal memoranda and supplements in support and opposition, the exhibits and declarations attached thereto, and the entire record herein, for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the defendant's Partial Motion to Dismiss or, in the Alternative, for Partial Summary Judgment, ECF No. 14, is **GRANTED AS CONCEDED** on Count I, regarding plaintiff's FOIA Request Numbers 2020-02640 and 2020-01450, and all fourteen FOIA requests submitted by the University of Iowa listed on Exhibit B to the Complaint, Ex. B., ECF No. 1-2, and **GRANTED** on Count II; and it is further

**ORDERED** that plaintiff's claims in Count I regarding plaintiff's FOIA Request Numbers 2020-02640 and 2020-01450, and all fourteen FOIA requests submitted by the University of Iowa listed on Exhibit B to the Complaint, Ex. B., ECF No. 1-2 are hereby dismissed from this action; and it is further

**ORDERED** that partial summary judgment is entered in favor of defendant on Count II; and it is further

1

**ORDERED** that all individual claims in Count I of the Complaint, except plaintiff's FOIA Request Number 2020-02603, are hereby **SEVERED** and will be dismissed unless, by March 22, 2024, they are refiled in appropriate separate actions.  Separate filing fees must be paid, but the claims regarding FOIA Requests covered in Count I of the Complaint asserted in timely refiled suits will relate back to the date on which the instant case was filed; and it is further

**ORDERED** that the parties must submit a Joint Status Report, by March 22, 2024, stating whether any issues remain as to plaintiff's FOIA Request Number 2020-02603 and, if so, proposing a briefing schedule to resolve such issues, unless a stipulation of dismissal is filed by that date.

**SO ORDERED.**

Date:  March 10, 2024

_____
**BERYL A. HOWELL**
United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS, | |
| Plaintiff, | Civil Action No. 23-1328 |
| v. | Judge Beryl A. Howell |
| U.S. DEPARTMENT OF JUSTICE, | |
| Defendant. | |

## MEMORANDUM OPINION

Plaintiff, the Washington Lawyers' Committee for Civil Rights and Urban Affairs

("WLC" or "plaintiff"), initiated this lawsuit against the U.S. Department of Justice ("DOJ" or

"defendant") for delays by a DOJ component, the U.S. Bureau of Prisons ("BOP"), in responding

to record requests made by WLC and a separate educational institution, pursuant to the Freedom

of Information Act ("FOIA"), 5 U.S.C. § 552.  *See* Compl. at 1, ECF No. 1; *id.*, Ex. A, Chart of

WLC FOIA Requests ("WLC Chart") at 2–4, ECF No. 1-1; *id.*, Ex. B., Chart of University of

Iowa FOIA Requests ("Iowa Chart") at 2, ECF No. 1-2.[1]  In two claims, plaintiff alleges that

BOP failed to provide records responsive to over forty separate FOIA requests made by WLC, in

violation of the statutory timeframes set out in FOIA, *see* Compl. ¶¶ 35–38 (Count I); WLC

Chart at 2–4, and that BOP has a "policy and practice" of failing "to conduct a search reasonably

calculated to uncover all records requested . . . [and] produce requested records or otherwise

---

[1]      The Complaint incorporates by reference two charts, attached as Exhibits A and B, listing allegedly
submitted FOIA requests by WLC and the University of Iowa to BOP, respectively, along with limited information
about each request, such as whether BOP had produced responsive records, in part or in full. *See* Compl. ¶¶ 35–38;
WLC Chart (listing 43 FOIA requests); Iowa Chart (listing 14 FOIA requests).  The WLC Chart indicates that no
records were received in response to 41 of plaintiff's 43 listed FOIA requests.

1

demonstrate that requested records are exempt from production within the time period required by FOIA or at least within a reasonable period of time," Compl. ¶ 40 (Count II).

The record in this case is confusing, starting with plaintiff's Complaint and the precise number of FOIA requests at issue in this case. Plaintiff has attempted to shoehorn dozens of unrelated FOIA requests into a single Complaint, and in so doing has made this case overcomplicated, with a moving target of issues to address for both opposing government counsel and this Court. This confusion stops with this decision.

Defendant moved for partial dismissal of plaintiff's Complaint, or, in the alternative, for partial summary judgment, as to Count II, the policy or practice claim, and as to sixteen of the individual FOIA requests referenced in the two charts incorporated into and attached to plaintiff's Complaint. *See* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 1–3, ECF No. 14-1. Both parties now agree that 39 FOIA requests by plaintiff are at issue in Count I of the Complaint, and that none of the sixteen individual FOIA requests—two by plaintiff and fourteen on the Iowa Chart—subject to defendant's motion to dismiss remain at issue. Joint Status Report ("JSR") (Jan. 19, 2024) at 1–4, ECF No. 21. For the reasons below, defendant's motion for partial summary judgment as to the policy or practice claim in Count II is granted. At the same time, the part of the pending motion to dismiss sixteen of the FOIA requests that appeared to be at issue in Count I but were not, including the fourteen requests on the Iowa Chart and FOIA Request Numbers 2020-02640 and 2020-01450 on the WLC Chart, is granted as conceded, and the remaining individual FOIA request claims brought in Count I are severed, except as to FOIA Request Number 2020-02603, which is the earliest of the pending requests plaintiff submitted to

BOP still at issue, and plaintiff is provided the opportunity to refile each of the severed claims in separate actions.[2]

## I.   BACKGROUND

The relevant factual and procedural history is summarized below.

### A.   Factual Background

Plaintiff, a nonprofit legal services provider, has a priority of "addressing unconstitutional confinement conditions for persons in prisons and jails."  Compl. ¶ 9.  To facilitate litigation brought on behalf of prisoners in federal custody, plaintiff frequently requests records from the BOP pursuant to FOIA, *id*., since "representation [of incarcerated clients] is not possible without factual investigation and documents," *id.* ¶ 11.  Due to what plaintiff claims are BOP's restrictive policies related to document access, "incarcerated individuals have limited access to the types of documents required to investigate and prosecute their legal claims," *id.*, and "[a]bsent a FOIA request, the BOP generally refuses to produce any information to the counsel of incarcerated clients," *id.* ¶ 12.  WLC's Senior Counsel describes this policy as being in place "for the four years I have represented individuals in BOP custody and, to the best of my knowledge, for the more than fifteen years WLC has represented individuals in BOP custody."  Pl.'s Mem. in Opp'n Def.'s Mot. to Dismiss or for Partial Summ. J. ("Pl.'s Opp'n"), Decl. of Margaret Hart ("Hart Decl.") ¶ 7, ECF No. 17-2.

Plaintiff describes the majority of its FOIA requests as narrowly seeking materials that would be available in an individual client's file.  Compl. ¶ 17.  Despite these narrow records

---

[2]      Although defendant reports that all records responsive to plaintiff's FOIA Request Number 2020-02603 were produced on November 29, 2023, JSR at 2, whether any disputes remain as to this FOIA request remains unclear.  The parties are thus directed to submit, by March 22, 2024, a joint status report advising the Court as to whether any outstanding issues remain as to FOIA Request Number 2020-02603 and, if so, proposing a briefing schedule to resolve any such issues, unless a stipulation of dismissal of this case is filed by that date.

requests, "BOP fails to conduct a search reasonably calculated to uncover all records requested or respond to WLC's requests within the timelines Congress mandated in FOIA," and instead plaintiff "must wait to bring litigation until the BOP chooses to respond." *Id.* In addition, plaintiff acknowledges that some FOIA requests related to "BOP's compliance with the civil and constitutional rights of incarcerated individuals on a system-wide basis . . . may be more complex," but asserts that "BOP is still legally obligated to respond" and fails to do so within "statutory timelines for complex FOIA requests, or produce a substantive response for years, if ever." *Id.* ¶ 18.

As support for the policy and practice claim, plaintiff alleges that BOP's record access policies "inflat[e] the number of FOIA requests directed to it by funneling *all* information requests through FOIA, despite no statutory duty to do so," and that "BOP then claims it is unable to provide timely responses to *any* FOIA request because of the volume of FOIA activity." *Id.* ¶ 19 (emphasis in original). Plaintiff further accuses BOP of using this manufactured burden of FOIA requests as a pretext to shield the agency from investigations and resultant litigation that would flow from access to requested documents. *Id.* Plaintiff asserts that "[t]he BOP's ill-gotten ability to withhold requested records *for years* is a contributing factor to the persistence of abuse in BOP facilities and the lack of scrutiny such abuses receive in the public or—where warranted—in litigation. Such nontransparent and unaccountable government activity is precisely the problem Congress intended FOIA to ameliorate." *Id.* (footnote omitted).

The factual underpinnings of the policy and practice claim in Count II include allegations that, between June 2022 and the time of filing of the instant complaint, plaintiff submitted 28 FOIA requests seeking records for clients incarcerated at United States Penitentiary Thomson, but BOP had not produced any responsive records. *Id.* ¶¶ 20-21; WLC Chart. Furthermore, over the past thirteen years, plaintiff submitted to BOP more than 55 FOIA requests and BOP failed to

4

produce "a comprehensive set of responsive documents or a determination of denial with the reasons therefor and notice of appeal rights" for any of these requests.  *Id.* ¶ 23.

To counter many of these assertions, defendant describes in its statement of material facts, supported by two declarations submitted by BOP personnel with direct knowledge, BOP's process for handling FOIA requests, stating that "[d]ue to the large number of FOIA/PA requests received by BOP and the limited resources available to process such requests, BOP handles each request on a first in, first out basis in relation to other requests in the same track."  Def.'s Mot, Declaration of BOP's Office of General Counsel, FOIA and Privacy Act Section, Supervisory Attorney Eugene Baime ("Baime Decl.") ¶ 7, ECF No. 14-3.  Defendant denies that BOP has any "policy or practice, either formal or informal, of intentionally violating FOIA for any reason, and in fact, works tirelessly to promote governmental transparency and respond to FOIA requests providing as much releasable information as possible as quickly as it possibly can given BOP's resource constraints and its backlog of outstanding FOIA requests."  *Id.* ¶ 9.  As to its resource constraints, BOP represents that its "FOIA staffing levels have decreased 43% since FY 15," and that during the COVID-19 pandemic, "[i]n addition to processing FOIA requests, BOP FOIA staff also handled certain COVID-related tasks, such as augmenting staff at correctional facilities and responding to phone calls and emails to FOIA's publicly available contact information unrelated to FOIA and relating to such things as the health of a loved one and BOP operations as a whole."  *Id.* ¶¶ 15–16.  Such responsibilities ate away at the time that BOP FOIA staff could spend responding to traditional FOIA requests.  *Id.*

Defendant further describes several proactive measures that BOP takes to increase transparency for the public, including "proactively post[ing] numerous records on its public webpage" and allowing "FOIA requesters [to] track the status of their requests on BOP's public FOIA website."  *Id.* ¶¶ 12–13.  In addition, contrary to plaintiff's assertion that all

representation-related records requests must be submitted through the FOIA process, BOP created and implemented a program in 2020 that "drastically improved attorneys' access to their clients' medical records." *Id.* ¶ 18.  Under that program, "[a]ttorneys who submit a request for their client's medical records in support of motions for compassionate release and requests for home confinement usually receive the inmate's past two years of medical records within twenty-four hours of requesting them." *Id.*  Through this program, BOP represents that "[s]ince May 2020, BOP has responded to well over 6,000 requests for medical records and released in excess of 1,000,000 pages of records, none of which are included in BOP's annual FOIA numbers." *Id.*

BOP has also implemented a new plan in January 2023 to improve processing times for FOIA requests by centralizing oversight of the FOIA process.  *Id.* ¶ 21.  Since implementing that plan, the FOIA office has processed 36.5% more requests on a weekly basis than were processed in the first 19 weeks of FY 2023, and has slowed the rate of backlog increases.  *Id.*  In addition to these improvements in FOIA processing, training and tracking programs have been put in place to improve and monitor BOP's FOIA compliance.  *See generally id.*

Notably, plaintiff does not dispute these sworn BOP representations nor otherwise call into question the truthfulness or good faith of the statements in BOP's declarations. Nevertheless, plaintiff seeks discovery beyond the attestations in these declarations regarding, *inter alia*, backlogs, progress in reducing backlogs and double-checking the content of training, noting that "[i]n the course of this litigation, WLC intends to discover the extent of BOP's noncompliance with FOIA, including: internal communications and records related to how and in what order FOIA requests are actually analyzed, prioritized, and processed; internal communications and records related to FOIA compliance; the substance of the FOIA trainings BOP alleges it provides to staff; and any and all other records related to the functional, day-to-day handling of FOIA requests."  Hart Decl. ¶ 19.  In addition, plaintiff does not dispute BOP's

6

confirmation that plaintiff never raised administratively any policy or practice claim challenging

BOP's FOIA processing practices.  Def.'s Mot., Att. 4, Declaration of BOP's Office of General

Counsel, FOIA and Privacy Act Section, Senior Government Information Specialist Sarah Lilly

("Lilly Decl.") at ¶ 5, ECF No. 14-4; Pl.'s Opp'n, Att. 1, Pl.'s Response to Def.'s Statement of

Material Facts ("Pl.'s SOF") at ¶ 45–46.

### B.    Procedural History

In May 2023, plaintiff filed the instant complaint, attached to which are two charts of

FOIA requests submitted to BOP.  *See generally* Compl.; WLC Chart; Iowa Chart.  The WLC

Chart lists 43 FOIA requests submitted by plaintiff with the following information: the client or

topic, the FOIA case number assigned by BOP, the date the request was sent, the due date for

response, the date of receipt of any acknowledgment letter and a summary of such

acknowledgment letter, any extended due dates for production of records, whether any records

were received, and the number of months overdue for response at the time of the complaint's

filing.  WLC Chart.  Of the 43 requests in the WLC Chart, 41 are designated as having no

records received, one is designated as having partial records received, and one is designated as

having all records received.  *Id.*  The Iowa Chart shows the same set of information for fourteen

requests submitted by Alison Guernsey of the University of Iowa College of Law's Federal

Criminal Defense Clinic.  Compl. ¶ 29.

As noted, the Complaint, in Count I, incorporates all the factual allegations, including

those allegations referencing the Iowa Chart, and alleges that defendant violated FOIA in failing

adequately to respond "to each of WLC's requests," Compl. ¶ 36, despite the WLC chart

showing at least one request for which all records were received, *see* WLC Chart.  Indeed, the

Complaint fails to identify which of the requests in either of the attached charts are actually

encompassed in this claim—with plaintiff's intent only deciphered through briefing on the

pending motion and the parties' joint status reports.  Defendant, understandably, originally

interpreted plaintiff's Count I to encompass all of the FOIA requests listed in both the WLC

Chart and the Iowa Chart, for a total of fifty-seven requests, and framed the pending motion

accordingly.  Def.'s Mem. at 26–30.  Defendant sought dismissal of all fourteen FOIA requests

listed on the Iowa chart, and two requests listed on the WLC chart, namely: FOIA Request

Number 2020-02640, for which BOP produced responsive records and defendant asserts plaintiff

failed administratively to exhaust, *id*. at 28, and FOIA Request Number 2020-01450, for which

the WLC Chart states defendant has produced partial responsive records and is already subject to

litigation in a case assigned to another judge of this Court, *id*. at 29.

Briefing on the pending motion made clear, however, that only the 41 separate FOIA

requests listed in the WLC Chart for which plaintiff indicated no responsive records had been

received prior to the lawsuit were originally at issue in Count I.  Pl.'s Opp'n at 12 ("WLC

identified 41 FOIA requests that were never answered prior to filing the Complaint."); WLC

Chart at 2–4.  Plaintiff further clarified that "[a]fter this lawsuit was filed, BOP responded to two

of the FOIA requests at issue," namely, FOIA Request Numbers 2023-01659 and 2023-01496,

Pl.'s Opp'n at 2 n. 3, and those are no longer at issue as well as the two FOIA requests for which

defendant seeks dismissal, *i.e.*, FOIA Request Numbers 2020-01450 and FOIA Request Number

2020-02640, Joint Status Report ("JSR") (Jan. 19, 2024) at 2–3.

In sum, as confirmed in a joint status report submitted by the parties, plaintiff only

contests BOP's response to 39 FOIA requests, which remain at issue in Count I.  Pl.'s Opp'n at 2

n.3; JSR 1–2.[3]  Plaintiff is still waiting for responsive records for 37 of those requests.  JSR at 2.

Defendant represents that BOP will comply with plaintiff's requests and, to this end, is currently

searching for and accumulating responsive records for 35 of those requests.  *Id.*  In total, so far,

defendant has collected responsive records for 25 of plaintiff's requests, "consisting of

approximately 22,000 pages of potentially responsive records across these FOIA requests."  *Id.*

The Complaint also alleges, in Count II, a policy or practice by BOP to fail "to conduct a

search reasonably calculated to uncover all records requested . . . [and] produce requested

records or otherwise demonstrate that requested records are exempt from production within the

time period required by FOIA."  *See* Compl. ¶ 40.  Defendant seeks partial dismissal or,

alternatively, partial summary judgment, pursuant to Federal Rules of Civil Procedure 12(b)(6)

and 56, as to Count II.  *Id.*[4]  Defendant's motion is now ripe for decision.

## II.    LEGAL STANDARD

### A.    FOIA Background

"The fundamental principle animating FOIA is public access to government documents."

*Waterman v. Internal Revenue Serv.*, 61 F.4th 152, 156 (D.C. Cir. 2023) (quoting *Valencia-*

*Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)) (citation omitted); *accord*

*DiBacco v. U.S. Army* ("*DiBacco I*"), 795 F.3d 178, 183 (D.C. Cir. 2015).  Agencies are,

therefore, statutorily mandated to "make . . . records promptly available to any person" who

---

[3]      Those FOIA request numbers are:  2020-02603, 2020-02615, 2022-04252, 2022-04253, 2022-04257, 2022-04258, 2022-04308, 2022-04435, 2022-04478, 2022-04979, 2022-04982, 2022-04989, 2022-04990, 2023-00933, 2023-00934, 2023-00996, 2023-00997, 2023-00999, 2023-01096, 2023-01193, 2023-01270, 2023-01498, 2023-01499, 2023-01504, 2023-01647, 2023-01649, 2023-01650, 2023-01651, 2023-01652, 2023-01653, 2023-01658, 2023-01660, 2023-01776, 2023-01782, and 2023-02597.  JSR (Jan. 19, 2024) at 2–3.  The parties report that 39 requests are still at issue, but list only 35 FOIA request numbers.  *Id.*  The remaining four FOIA requests assumed to be at issue are those listed on the WLC chart to which BOP has not yet assigned a FOIA case number.  WLC Chart at 4.

[4]      Defendant originally sought partial dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(1), as to the fourteen FOIA requests on the Iowa Chart that were originally assumed by defendant to be encompassed by Count I and two requests, FOIA Request Numbers 2020-02640 and 2020-01450, on the WLC Chart, but since plaintiff's clarification that these requests are not at issue, this part of defendant's motion is granted as conceded.

submits a request that "reasonably describes such records" and "is made in accordance with [the agency's] published rules." 5 U.S.C. § 552(a)(3)(A).  "Congress, however, did not 'pursue transparency at all costs'[;] [r]ather, it recognized that 'legitimate governmental and private interests could be harmed by release of certain types of information.'" *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.* ("*CREW II*"), 45 F.4th 963, 967 (D.C. Cir. 2022) (first quoting *Hall & Assocs. v. EPA*, 956 F.3d 621, 624 (D.C. Cir. 2020); and then quoting *AquAlliance v. U.S. Bureau of Reclamation*, 856 F.3d 101, 102 (D.C. Cir. 2017)).  To balance those competing interests, "FOIA exempts nine categories of documents from 'the government's otherwise broad duty of disclosure.'" *Waterman*, 61 F.4th at 156 (quoting *AquAlliance*, 856 F.3d at 103).  "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

FOIA authorizes federal courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  The statute "places the burden 'on the agency to sustain its action,' and the agency therefore bears the burden of proving that it has not 'improperly' withheld the requested records." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.* ("*CREW I*"), 922 F.3d 480, 487 (D.C. Cir. 2019) (first quoting 5 U.S.C. § 552(a)(4)(B); and then quoting *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989)).

The FOIA sets out a "default 20-working-day timeline," or 30-days in "unusual circumstances," during which the agency determines "*whether* to comply with a FOIA request— and communicate "the reasons therefor." *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 182, 189 (D.C. Cir. 2013) (citing 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i) (emphasis added).  "To be clear, a 'determination' does not require actual *production* of the records to the requester at the exact same time that the 'determination' is communicated to the requester." *Id*. at 188

(emphasis in original).  "If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."  *Id.* at 189.  In other words, the FOIA "prescribes no fixed timeframe within which an agency must *produce* non-exempt records. Rather, the statute establishes a set of procedures for agencies (and requesters) to follow in furtherance of the general mandate to make non-exempt records promptly available."  *Judicial Watch, Inc. v. Dep't of Homeland Security*, 895 F.3d 770, 791 (D.C. Cir. 2018) (Srinivasan, C.J., dissenting) (emphasis supplied).

## B.   Federal Rules of Civil Procedure 12(b)(6) and 56

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct."  FED. R. CIV. P. 8(a)(2), (d)(1).  Plaintiff must "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original accepted and citation omitted).  To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

In deciding a motion under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations in the complaint as true, "even if doubtful in fact," and construing all reasonable inferences in the plaintiff's favor.  *Twombly*, 550 U.S. at 555; *see also Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).  In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice."  *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alterations in original accepted and citation omitted).

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (citation omitted); *see also* Fed. R. Civ. P. 56(a).  In FOIA cases, "courts must grant summary judgment for an agency if its affidavit: (1) describes the justifications for nondisclosure with 'reasonably specific detail'; and (2) is not substantially called into question by contrary record evidence or evidence of agency bad faith." *Schaerr v. Dep't of Justice*, 69 F.4th 924, 929 (D.C. Cir. 2023) (quoting *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 374 (D.C. Cir. 2007)); *see also Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 734–35 (D.C. Cir. 2017) (explaining that summary judgment may be granted based on agency affidavits "if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith").  Agency declarations are afforded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).  Most FOIA cases "can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III.   DISCUSSION

Plaintiff's policy and practice claim against BOP alleged in Count II would survive defendant's motion to dismiss, but the record demonstrates defendant's entitlement to partial summary judgment on this claim.  This record also highlights that plaintiff's challenges encompassed in Count I are to BOP's responses to 39 entirely different FOIA requests, which were submitted separately and at various times, seeking records about entirely different individuals or BOP programs, with "overdue" time periods ranging from less than three months

to over three years, *see generally* WLC Chart, and each raising separate issues that require severance in the interests of judicial economy.

### A.  Policy and Practice Claim in Count II

Defendant seeks dismissal of plaintiff's pattern or practice claim in Count II for failure administratively to exhaust or state a cognizable claim, or, alternatively, for summary judgment as to this claim.  Def.'s Mem. at 14–26.  As discussed in more detail below, the record supports defendant's entitlement to summary judgment on Count II.

### 1.  *Administrative Exhaustion of Policy-and-Practice Claims*

Defendant seeks dismissal of Count II, arguing that plaintiff has failed administratively to exhaust this policy-or-practice claim because BOP "has no record of Plaintiff ever raising a challenge with respect to the alleged policy or practice" in any of its FOIA requests or appeals to the Office of Information Policy.  Def.'s Mem. at 15.  Plaintiff counters that the administrative exhaustion requirement is satisfied through constructive exhaustion of the individual FOIA requests included in the WLC Chart, since the crux of plaintiff's policy-or-practice claim is that defendant is not responding to its FOIA requests, and thus plaintiff "had nothing to appeal and no way to afford the agency an 'opportunity to correct its own errors.'"  Pl.'s Opp'n at 3.  As administrative exhaustion poses jurisprudential questions about the availability of judicial review, this grounds for dismissal will be considered before turning to defendant's motion for partial summary judgment on Count II.

At the outset, the law is well-settled that "[t]he doctrine of administrative exhaustion applies to" FOIA cases "and limits the availability of judicial review." *Elec. Privacy Info. Ctr. v. IRS* ("*EPIC*"), 910 F.3d 1232, 1238 (D.C. Cir. 2018).  "Although exhaustion of a FOIA request is not jurisdictional," this "jurisprudential doctrine" precludes "judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar." *Id*. (quoting *Oglesby v.*

13

*U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)); *see also Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (holding that "[e]xhaustion of administrative remedies is generally required before seeking judicial review"); *Sinito v. U.S. Dep't of Justice*, 176 F.3d 512, 516 (D.C. Cir. 1999) (recognizing that "FOIA requires each requestor to exhaust administrative remedies" (citing *Oglesby*, 920 F.2d 57)); *Dettmann v. U.S. Dep't of Justice*, 802 F.2d 1472, 1476 (D.C. Cir. 1986) ("It goes without saying that exhaustion of remedies is required in FOIA cases."). The administrative exhaustion requirement before filing in federal court is to ensure "'the agency has an opportunity to exercise its discretion and expertise on the matter to make a factual record to support its decision.'"  *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (quoting *Oglesby*, 920 F.2d at 61).

A requester may exhaust administrative remedies regarding a federal agency's response to a specific records request in two ways under the FOIA.  First, when an agency timely responds to a request, within twenty days—or 30 days in "unusual circumstances," 5 U.S.C. § (a)(6)(B)(i)—a requester dissatisfied with the agency's determination must administratively appeal that determination to the head of the agency before filing suit, *see* 5 U.S.C. § 552(a)(6)(A); *see also Oglesby*, 920 F.2d at 65 ("[F]oregoing an administrative appeal will preclude the [FOIA] requester from ever bringing suit on that request because the individual will not have exhausted his administrative remedies . . . ."); *Weisberg v. U.S. Dep't of Justice* ("*Weisberg III*"), 745 F.2d 1476, 1497 (D.C. Cir. 1984) (holding that appellant "did not exhaust his administrative remedies" where he "pretermitted the administrative stage of the processing of FOIA requests").  Second, when an agency fails to respond to a request in a timely manner, a requester "shall be deemed to have exhausted his administrative remedies with respect to such request," 5 U.S.C. § 552(a)(6)(C), and may immediately seek judicial review in federal district court.  *See, e.g., Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d at 182 ("As a general

14

matter, a FOIA requester must exhaust administrative appeal remedies before seeking judicial

redress.  But if an agency does not adhere to certain statutory timelines in responding to a FOIA

request, the requester is deemed by statute to have fulfilled the exhaustion requirement.");

*Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) ("A requester is

considered to have constructively exhausted administrative remedies and may seek judicial

review immediately if . . . the agency fails to answer the request within twenty days.").  Such

"constructive exhaustion" is "a special provision virtually unique to FOIA."  *Spannaus v. U.S*

*Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987).

The administrative exhaustion requirement is typically focused on a federal agency's

response to a specific FOIA request.  Notably, in the few cases in which the D.C. Circuit has

approved judicial review of a policy-and-practice claim challenging an agency's handling of

FOIA requests generally, that claim has not first undergone administrative review before the

agency.  *See, e.g.*, *Judicial Watch*, 895 F.3d at 781 (holding requester stated a plausible policy or

practice claim by alleging prolonged, unexplained delays in producing non-exempt records that

could signal the agency has a policy or practice of ignoring FOIA's requirements, with no

mention of prior administrative exhaustion); *Newport Aeronautical Sales v. Dep't of Air Force*,

684 F.3d 160, 163-64 (D.C. Cir. 2012); *Payne Enters., Inc. v. United States*, 837 F.2d 486, 489–

91 (D.C. Cir. 1988) (recognizing viability of cause of action for "a policy or practice of delayed

disclosure or some other failure to abide by the terms of the FOIA," without addressing

administrative exhaustion).

In advancing the argument that the administrative exhaustion doctrine applies to policy-

or-practice claims under FOIA, defendant relies on *Dettman v. United States Department of*

*Justice*, 802 F.2d 1472 (D.C. Cir. 1986).  There, the D.C. Circuit did, indeed, require

administrative exhaustion of a challenge to an agency's general methodology employed in

15

responding to a specific FOIA request to limit production of materials deemed only tangentially related to the request.  *Dettman*, 802 F.2d at 1473–74.  Though the "general practice . . .  was specifically brought to [the requestor's] attention in writing," the plaintiff raised no objection to the referenced methodology in the administrative appeal, *id.* at 1474, and then challenged that methodology in federal court, *id.* at 1474–76.  The D.C. Circuit explained that the plaintiff's failure to obtain administrative review of the challenge to the methodology, which was "a sensible, general practice developed by the [agency] and clearly articulated to the FOIA requester," required dismissal of her appeal for failure to exhaust her administrative remedies.  *Id.* at 1476.

Plaintiff argues that *Dettman* is distinguishable because, here, BOP never disclosed to plaintiff during the administrative process, in written or other form, any formal policy regarding the processing methodology used for FOIA requests that produces the regular delays experienced by plaintiff and other FOIA requestors, as documented in the WLC and Iowa Charts.  Pl.'s Opp'n at 13.  In plaintiff's view, this factual distinction between *Dettman*, where the agency produced to the requestor a written policy as to its methodology, and the instant case precludes the straightforward application of the administrative exhaustion doctrine to bar judicial review of plaintiff's policy or practice claim.  Pl.'s Opp'n at 12 (stating that "BOP has not provided WLC with any affirmative agency action (or pattern of affirmative agency action) that could possibly be appealed administratively").

Plaintiff's factual distinction is well highlighted but may be immaterial: just as the *Dettman* plaintiff, on a one-time request, was sufficiently well advised of the agency's challenged "general practice" to raise and exhaust the claim before the agency, the plaintiff here is sufficiently well advised and well aware of both BOP's policy requiring counsel to file a FOIA request to obtain BOP records about a client and the agency's challenged chronic delays in

16

response, as demonstrated by plaintiff's documented experience in the WLC Chart of delays in

receiving any records responsive to over forty requests submitted to BOP.  If clear awareness of

the challenged policy or practice were sufficient, under *Dettman*, to require that a practice claim

be raised and administratively exhausted before the agency, then the distinction plaintiff draws

actually undermines its position and only bolsters the government's reading of that case.  Instead,

in contrast to generic policy or practice claims, such as the one asserted by plaintiff here,

*Dettman* is distinguishable because the specific method applied to define the scope of and search

for records responsive to the FOIA request at issue there, in the Circuit's view, was integral to

the administrative appeal but not raised by the plaintiff in that action and therefore not

appropriately exhausted.

The question of whether policy-or-practice claims brought under FOIA must first be

presented to and administratively exhausted before the agency was obliquely referenced by the

D.C. Circuit in *Khine v. United States Department of Homeland Security*, 943 F.3d 959 (D.C.

Cir. 2019), but not fully addressed since the non-exhausted policy-and-practice claim raised was

dismissed for lack of standing.  In particular, the D.C. Circuit held that a one-time individual

requestor, who failed to exhaust administrative remedies on a policy-or-practice claim, "lacks

standing to seek a reformation of the way an agency handles its FOIA requests" through such a

claim because she "will not make future requests and she is not a business that will file requests

in the future."  *Id.* at 965 (internal quotation marks omitted).  Since the individual plaintiff was

unlikely again to be subject to the challenged policy or practice, she "cannot rely on that interest

to justify her failure to exhaust."  *Id.*  By contrast to the individual requester, who lacked

standing to pursue the unexhausted policy-or-practice claim, the Court proceeded to explain that

the co-plaintiff, Catholic Charities, was "a party who might have brought a policy-or-practice

claim." *Id.* at 966.[5]  This may suggest that a FOIA requester likely to experience future harm

from an ongoing agency policy or practice may pursue judicial review of a challenge to the

policy or practice without satisfying the administrative exhaustion requirement.  Yet, drawing

this conclusion may amount to a logical leap too far, rather than a reasonable inference, given the

*Khine* holding's focus on standing.  Indeed, the *Khine* Court acknowledged the policies

undergirding the administrative exhaustion requirement, stating that "[s]hort of a properly

presented claim that the agency has a policy or practice of providing inadequate initial

determinations, we cannot conclude that [the plaintiff's] interest in immediate judicial review

outweighs the agency's interest in managing and completing its administrative process."  Def.'s

Reply Mem. in Supp. of Def.'s Mot. (Def.'s Reply) at 3–4, ECF No. 19 (quoting *Khine*, 943 F.3d

at 968).  In short, *Khine* provides minimal useful guidance in divining whether administrative

exhaustion applies to policy or practice claims under the FOIA.

Turning to the basic principles governing exhaustion, under binding precedent in this

Circuit, resolves this issue.  First, failure to exhaust is by no means an automatic bar to judicial

review, as "courts usually look at the purposes of exhaustion and the particular administrative

scheme in deciding whether they will hear a case or return it to the agency for further

processing."  *Oglesby*, 920 F.2d at 61. "Exhaustion applies only if its underlying purposes

'support such a bar,'" and the D.C. Circuit has held that the purpose of exhaustion does not

support barring a challenge to an agency's broad interpretation of its statutory obligations under

FOIA.  *EPIC*, 910 F.3d at 1239.  In the instant context of a policy or practice claim alleging

undue delay in response to FOIA requests, in particular counsel requests for client records with

---

[5]     The co-plaintiff organization did not save the claims at issue in *Khine*, because "counsel for Khine and
Catholic Charities repeatedly stated that Catholic Charities was not itself a requester of the information at issue and
that Khine was the sole FOIA requester in this case."  *Khine*, 943 F.3d at 966.

the concomitant urgency associated with such requests, plaintiff accurately assesses that a requirement to exhaust administrative remedies would be impractical, or even futile, and serve only to let the defendant evade judicial review because the agency could merely continue its alleged conduct of failing timely or adequately to respond to FOIA requests.

Although the D.C. Circuit did not explicitly address futility as excusing administrative exhaustion in *Payne*—because administrative exhaustion was not considered in that case—the Court took a very practical approach to the agency's mootness and ripeness arguments, noting that, though production of the records at issue would moot a specific request under FOIA, it would not "moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Payne*, 837 F.2d at 491. Such an approach is similarly appropriate in this case, where BOP's alleged policy of treating all record requests the same, without differentiating requests from counsel, like plaintiff, in their active representation of clients in BOP's custody, which policy allegedly creates and contributes to delays in response to all FOIA requests, renders the presentation of a policy-or-practice claim during the administrative appeals process all but futile.

The D.C. Circuit has also recognized similarities between the remedy available through a policy-and-practice claim under FOIA and through review of agency action under § 704 of the Administrative Procedure Act ("APA"), which does not require administrative exhaustion. *See Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.* ("*CREW*"), 846 F.3d 1235, 1246 (D.C. Cir. 2017). In *CREW,* the D.C. Circuit evaluated whether FOIA provided an "adequate remedy in court" to preclude review under APA § 704. *Id.* at 1241. In determining that FOIA did provide such an adequate remedy, the Court explained that "we see no yawning gap between the relief FOIA affords and the relief CREW seeks under the APA." *Id.* at 1246. In sum, no

19

administrative exhaustion is required for judicial review of policy or practice claims under the

FOIA.[6]

### 2.    *Summary Judgment is Warranted on the Policy or Practice Claim*

Count II's policy-or-practice claim would survive the plausibility assessment required

under Rule 12(b)(6), *see supra* n.6, but defendant nevertheless is entitled to summary judgment

on Count II based on the facts established in defendant's declarations.

The D.C. Circuit has recognized that, separate from claims seeking relief for specific

requests made under the FOIA, requesting parties may assert a "claim that an agency *policy or*

*practice* will impair the party's lawful access to information in the future." *Payne*, 837 F.2d at

491 (emphasis in original); *accord Newport Aeronautical Sales*, 684 F.3d at 164.[7]   A policy or

practice claim is viable "[s]o long as an agency's refusal to supply information evidences a

policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA,

and not merely isolated mistakes by agency officials." *Payne*, 837 F.2d at 491.   To state a claim

for relief under the doctrine articulated in *Payne*, a plaintiff must plausibly demonstrate that the

---

[6]    Defendant also moves for dismissal on the ground that plaintiff has failed to sufficiently state a policy or practice claim.  Def.'s Mem. at 16–18.  Plaintiff's complaint essentially mimics that filed in *Judicial Watch*, wherein the D.C. Circuit reversed the district court's grant of defendant's motion for judgment on the pleadings, explaining that "[i]n this circuit it is settled law that informal agency conduct resulting in long delays in making requested non-exempt records available may serve as the basis for a policy or practice claim." *Judicial Watch*, 895 F.3d at 777–78. The allegations in plaintiff's policy and practice claim thus would be sufficient to state a reasonably plausible claim and survive defendant's motion to dismiss under Rule 12(b)(6).  The government, wisely, proceeded to move for summary judgment on this claim in the alternative, so that this Court may look beyond the allegations to sworn facts regarding the challenged practice by considering the parties' declarations.

[7]    Recognition of policy or practice claims under the FOIA is not universal among the Circuit Courts of Appeal. *See, e.g., Am. Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*, 60 F.4th 16, 24 (2d Cir. 2023) (explaining that "FOIA provides no authority for a court to entertain such a challenge to agency action without following the requirements of the APA, and courts should not allow parties to evade APA requirements by using the FOIA in this way.  The proper avenue for challenging the policies and practices of agencies is the APA, 5 U.S.C. § 706."). In *Judicial Watch*, the D.C. Circuit noted that the First and Ninth Circuits have recognized similar claims "where an agency has a 'policy or practice' that 'will impair the party's lawful access to information in the future.'" *Judicial Watch,* 895 F.3d at 777 (citing *Payne*, 837 F.2d at 491, *Lybarger v. Cardwell*, 577 F.2d 764, 767 (1st Cir. 1978), and *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016)).

agency in question has adopted, endorsed, or implemented a policy or practice that constitutes an ongoing "failure to abide by the terms of the FOIA." *See id.*

Defendant focused primarily on plaintiff's supposed failure to state a plausible policy or practice claim, *see* Def.'s Mem. at 15–18, with only two pages of its 36-page opening memorandum addressing whether summary judgment should be granted to defendant on the substance of plaintiff's claim in Count II, *id.* at 19–20.[8]  Notwithstanding the minimal airtime given to this portion of defendant's motion, defendant is correct that BOP's declarations "reveal[] that Plaintiff's policy or practice claim fails because there is no genuine dispute as to the existence of any improper policy or practice." *Id.* at 19.

Generally, summary judgment may be granted to the moving party upon establishing facts entitling it to judgment on a claim, if the nonmoving party fails to rebut that evidence. *Winston & Strawn v. McClean*, 843 F. 3d. 503, 507 (D.C. Cir. 2016).  In the FOIA litigation context, an agency's declarations may provide the basis for grant of summary judgment if "they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020).  Furthermore, an agency's declarations are afforded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1201 (internal quotation marks omitted).

Plaintiff has failed to rebut the evidence offered by defendant to establish that summary judgment is warranted on plaintiff's policy or practice claim in Count II.  Recall, as summarized

---

[8]      Defendant also spends significant time arguing that pattern or practice claims must be cabined to instances in which agency conduct is egregious, Def.'s Mem. at 16–17, 20–22, but the D.C. Circuit has made clear that egregious agency conduct is not a requirement for a cognizable pattern or practice claim, *see Judicial Watch*, 895 F.3d at 781.

*supra* in Part I.A., that BOP receives an extraordinary number of FOIA requests each year, and

"works tirelessly to promote governmental transparency and respond to FOIA requests providing

as much releasable information as possible as quickly as it possibly can given [the Bureau's]

resource constraints and its backlog of outstanding FOIA requests."  Baime Decl. ¶ 9.  BOP has

improved its training processes and made significant progress in addressing its FOIA backlog in

recent years.  *Id.* ¶ 27.  Indeed, BOP recently implemented a new structural change to the

processing of FOIA requests, wherein one Central Office employee maintains national oversight

over all FOIA request processing.  *Id.* ¶ 21.  This program has allowed BOP staff to process

36.5% more requests per week than prior to its implementation, and to reduce its backlog.  *Id.*

Each of these facts serves to show that BOP does not have a policy or practice of "repeated,

unexplained, and prolonged delay in making information available" in response to FOIA

requests until requester litigation is initiated.  *Judicial Watch*, 895 F.3d at 779; *id.* at 780.

Plaintiff's only effort to rebut BOP's declarations is to point to its own FOIA requests

"that have gone unanswered for months and even years," Pl.'s Opp'n at 22, along with

admissions from BOP that it "has allocated resources away from its FOIA office and staff" and

"prioritizes requests in active litigation over other requests," *id.*, as evidence of a material dispute

precluding the grant of summary judgment.  Such statements, however, neither support a finding

of bad faith, *see e.g., Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978) ("[I]n view of the well-

publicized problems created by the statute's 10- and 20-day time limits for

processing FOIA requests and appeals, the CIA's delay alone cannot be said to indicate an

absence of good faith.") (footnote omitted); *Bolze v. Exec. Office for United States Attys.*, Civil

Action No. 17-2858 (FYP), 2021 U.S. Dist. LEXIS 227503, at *19 (D.D.C. Nov. 29, 2021)

("[c]ourts routinely find that delays in responding to FOIA requests are not, in and of

themselves, indicative of agency bad faith." (quoting *Skurow v. DHS*, 892 F. Supp. 2d 319, 326

(D.D.C. 2012))), nor establish a genuine dispute of material fact as to whether BOP has a policy or practice of intentionally failing to comply with the agency's FOIA obligations.  Defendant has provided detailed explanations of its process for responding to FOIA requests and the reason for delays in responding to requests, including explanation of "the challenges it faces regarding its backlog, and the steps that the Bureau has already taken in response to those challenges."  Def.'s Reply at 9.  "These declarations are not controverted by any competent evidence" provided by plaintiff, *id.*, and plaintiff's reliance on BOP's admitted delays in processing FOIA requests are insufficient to "suggest[] a policy or practice of violating" the FOIA, Pl.'s Opp'n at 22, to preclude the grant of summary judgment in the face of BOP's undisputed declarations providing multiple explanations for those delays, describing recently implemented and so far successful programmatic efforts to address delays, and denying that BOP has such a claimed policy or practice of violating the statute.

In a last gasp effort to avoid summary judgment, plaintiff seeks discovery, under Rule 56(d), contending that "summary judgment is generally unwarranted before discovery," rendering inappropriate consideration of defendant's pending motion for pre-discovery partial summary judgment on plaintiff's policy or practice claim.  Pl.'s Opp'n at 20–21.  The D.C. Circuit has set out the standard for ruling on Rule 56(d) discovery requests, explaining that the "movant must submit an affidavit which states with sufficient particularity why additional discovery is necessary," and satisfies three criteria: (1) "it must outline the particular facts the non-movant intends to discover and describe why those facts are necessary to the litigation"; (2) "it must explain why the non-movant could not produce the facts in opposition to the motion for summary judgment"; and (3) "it must show the information is in fact discoverable."  *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014) (quoting *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) (cleaned up)).  Plaintiff

25

fails to meet this standard to state with sufficient particularity why additional discovery is warranted on the record in this case.

In the context of FOIA, the D.C. Circuit has made clear that discovery should be ordered "only 'where there is evidence—either at the affidavit stage or (in rarer cases) before—that the agency acted in bad faith in conducting the search.'"  *Shapiro v. United States Dep't of Justice*, 40 F.4th 609, 615 (D.C. Cir. 2022) (quoting *In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020)) (internal quotation marks omitted).  Even where an agency's declarations are inadequate to support summary judgment in FOIA litigation, courts have been instructed "that the appropriate remedy is usually to allow the agency to 'submit further affidavits' rather than to order discovery."  *Id*.  Plaintiff simply fails to grapple with this FOIA-specific standard to meet the first *Folliard/Convertino* criteria requiring an outline of the particular facts to discover that are necessary to the litigation.  Where no allegation is raised of bad faith or inadequacy in BOP's explanations for delays in the processing of plaintiff's FOIA requests, plaintiff has a significant uphill challenge in pointing to any other facts necessary to the litigation to trigger a need for discovery under Rule 56(d).

To meet this challenge, plaintiff merely states its belief that "discovery will yield more evidence of the nature and extent of BOP's policy or practice of FOIA noncompliance."  Pl.'s Opp'n at 22–23.  Certainly, permitting plaintiff to obtain discovery of, *inter alia*, BOP's FOIA processes, training, resource allocation, prioritization to comply with court orders in ongoing FOIA litigation, and crushing increases in the volume of FOIA requests, could "yield" a lot more information about any and all of those matters, but that misses the point.  Plaintiff has suggested nothing to rebut the presumption of good faith afforded to defendant's declarations or to alter crediting BOP's explanations for the delays about which plaintiff complains in responding to FOIA requests.  *See Bartko v. Dep't of Justice*, 898 F.3d 51, 74 (D.C. Cir. 2018) (according

24

agency's declarations "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents") (internal quotation and citation omitted); *SafeCard Servs.*, 926 F.2d at 1201.  Put another way, plaintiff's request for discovery under Rule 56(d) boils down to its belief that more may be learned about internal BOP FOIA processing and training, and while that may be so, this is not the measure of whether additional discovery is necessary to resolve FOIA litigation.  Additional discovery of BOP may simply uncover additional evidence supporting the same explanations already put forward by BOP, with the downside of saddling BOP with the concomitant distraction and diversion of resources to comply with discovery requests rather than processing FOIA requests. This is one reason, as plaintiff acknowledges, discovery in individual FOIA cases is "rare."  Pl.'s Opp'n at 21.  As plaintiff also concedes, discovery requests in FOIA litigation "should be denied only when the Court is assured that 'an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains.'" *Id.* (quoting *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006)).  BOP meets this standard here.

To repeat, the declarations attached to defendant's motion for partial summary judgment are "reasonably detailed, submitted in good faith," and establish that no factual dispute remains as to the policy or practice claim alleged by plaintiff.  These declarations establish that BOP "takes its obligations under the FOIA seriously and has in several respects sought to improve its FOIA operations despite its current backlog and staffing shortages."  Def.'s Mem. at 20. Plaintiff tries to characterize defendant's declarations as "broad-brushed pronouncements from its Supervisory Attorney for FOIA and the Privacy Act to assert that 'the Bureau does not maintain any sort of unlawful policy or practice as to how it handles FOIA requests,'" Pl.'s Opp'n at 22, but that is far from a complete and accurate description.  BOP details the significant

25

increase in information requests that the BOP FOIA section has received since the start of the

COVID-19 pandemic, the efforts undertaken by BOP to meet its statutory FOIA obligations

when faced with this increased workload and challenges related to the pandemic and staffing

shortages, and the documented improvements in addressing FOIA processing delays.  Baime

Decl. ¶¶ 18–23.

Plaintiff has not suggested any bad faith on the part of BOP nor any inadequacy in BOP's

declarations, which are sufficient to explain the manner in which BOP processes FOIA requests

and entitles the agency to summary judgment on the Count II.

### B.  The Individual FOIA Requests in Count I Must Be Severed

As noted, *supra* in Part I.B., the Complaint's Count I lacks clarity as to which of the

FOIA requests incorporated and referenced in the accompanying WCL and Iowa Charts are

covered, though the parties' briefing on the pending motion and joint reports to the Court

clarified that 39 outstanding FOIA requests remain at issue.  JSR at 1–2; Parties' Meet and

Confer Statement (Oct. 24, 2023) at 2, ECF No. 18 (confirming that 39 requests remain

outstanding).  All but one of the dozens of individual FOIA claims in Count I will be severed.

As reflected in the WLC Chart, each of the 39 FOIA requests at issue were submitted by plaintiff

separately, almost all on different dates over a time span of three years, with each seeking

different records related to different individuals or about the operations of various BOP

programs.  WLC Chart at 2–4.  The Complaint and the WLC Chart, even read together, provide

little information to determine the precise subject matter of plaintiff's requests for individual

records, making any determination of similarities or overlap between the records requested

impossible.  Thus, the only connections between the FOIA requests in these charts seem to be

that they were filed by the same requestor, against the same agency, and form part of the basis of

plaintiff's policy or practice claim due to delays in response.  *See id.*

The Federal Rules of Civil Procedure provide that "[p]ersons may join in one action as plaintiffs if" two criteria are satisfied.  *See* Fed. R. Civ. P. 20(a).  First, they must "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences."  *Id.*  Second, it must be the case that "any question of law or fact common to all plaintiffs will arise in the action."  *Id.*  The Rules further provide that "[t]he court may . . . sever any claim against any party."  *See* Fed. R. Civ. P. 21.  Although, as its title indicates, Rule 21 deals primarily with a situation of misjoinder or nonjoinder of parties, courts have also held that Rule 21 "authorizes the severance of any claim, even without a finding of improper joinder, where there are sufficient other reasons for ordering a severance."  *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968); *see also Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995) (holding that Rule 21 gives the court "discretion to sever an action if it . . . might otherwise cause delay or prejudice"); *Aiello v. Kingston*, 947 F.2d 834, 835 (7th Cir. 1991) (observing that "[Rule] 21 allows a court to sever claims that are logically distinct"); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985) ("Rule 21 gives the court discretion to sever any claim and proceed with it separately if doing so will increase judicial economy and avoid prejudice to the litigants.'" (quoting 6 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1591)); 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 21.05 (3d ed. 2013) ("the courts agree that Rule 21 may apply even in the absence of misjoinder or nonjoinder" and "[t]he trial court thus has great discretion to restructure an action to promote the efficient administration of justice").[9]

---

[9]      *See also In re Methyl Tertiary Butyl Ether ('MTBE') Prods. Liab. Litig.*, 247 F.R.D. 420, 424 (S.D.N.Y. 2007) ("A trial court may sever parties or claims in its discretion to promote judicial economy."); *Fisher v. Ciba Specialty Chems. Corp.*, 245 F.R.D. 539, 544 (S.D. Ala. 2007) ("[C]laims may be severed from one another under Rule 21 in the Court's discretion based on considerations of efficiency, judicial economy and prejudice.")

This Court has previously expressed concern about using FOIA policy-or-practice claims, which are cognizable in this Circuit, as a "hook" to shoehorn a broad array of FOIA claims into a single civil action. *See, e.g.*, *Nat'l Sec. Counselors v. CIA*, Civil Case No. 12-284 (D.D.C. filed Feb. 22, 2012) (four plaintiffs alleging twenty-six separate causes of action against two federal agencies). This sort of catch-all pleading has a tendency to delay, rather than expedite, the Court's consideration of such cases because dispositive motions are inevitably filed in piecemeal fashion, *see, e.g.*, *Nat'l Sec. Counselors v. CIA*, Civil Case No. 11-444 (D.D.C. filed Feb. 28, 2011) (three separate partial dispositive motions filed), and non-dispositive motions regarding one or a small set of claims can delay consideration of the other claims, *see, e.g.*, *Nat'l Sec. Counselors v. CIA*, Civil Case No. 12-284 (motion to stay and motion for class certification regarding three of twenty-six causes of action). This type of pleading disserves the Federal Rules' salutary goal of "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding." *See* Fed. R. Civ. P. 1.

Severance of plaintiff's individual FOIA claims is thus appropriate under Federal Rule of Civil Procedure 21 "to promote the efficient administration of justice." *See* 4 MOORE'S FEDERAL PRACTICE § 21.05. This conclusion is based on the Court's prior experience with unwieldy FOIA complaints combining in a single lawsuit multiple FOIA requests, each of which seeks entirely different records. This leads to inefficient, piecemeal litigation. The conclusion is also based on the particular claims at issue in the instant case, which challenge the BOP's handling, apparently, of 39 outstanding FOIA requests that seek records relating to different individuals or different types of more general BOP information, that are at varying stages of administrative processing and thus are "logically distinct" and should be severed. *See Aiello*, 947 F.2d at 835; *compare Shapiro v. Dep't of Justice*, 969 F. Supp. 2d 18, 24 n.1 (D.D.C. 2013) (severing FOIA counts brought by four separate plaintiffs given the "disparate, unrelated nature of the claims."),

28

with *Am. Oversight v. Dep't of Veterans Affs.*, 326 F.R.D. 23, 25–26 (D.D.C. 2018) (denying

defendants' motion to sever where plaintiff's FOIA requests "all seek virtually the same,

straightforward, basic information."). Indeed, here, one of the FOIA requests listed on the WLC

chart is already subject to litigation brought by plaintiff that is pending before another judge of

this Court. Def.'s Mot. at 29 (citing *ACLU v. Department of Justice*, Civ. A. No. 22-0853 (JMC)

(D.D.C.)). This overlap in litigation is a waste of judicial resources, and further underscores the

need to sever the claims in this case and consider each FOIA request separately.

Thus, the claims encompassed in Count I, relating to the processing of 39 individual

FOIA requests, in the interest of efficiency and judicial economy, will be severed—with the

exception of the FOIA request submitted at the earliest date and pending the longest with BOP,

*i.e.*, FOIA Request Number 2020-02603—and dismissed unless, by March 22, 2024, plaintiff

refiles claims for these FOIA requests in appropriate separate actions. If such actions are refiled

separate filing fees must be paid, but the claims of timely refiled suits will relate back to the date

on which the instant case was filed. The parties must also submit a joint status report by March

22, 2024 stating whether any issues remain outstanding as to FOIA Request number 2020-02603

retained in this action and, if so, proposing a briefing schedule to resolve such issues, unless a

stipulation of dismissal is filed by that date.

## IV.    CONCLUSION

For the foregoing reasons, defendant's Partial Motion to Dismiss Or, in the Alternative,

for Partial Summary Judgment, is granted, as conceded, on Count I regarding plaintiff's FOIA

Request Numbers 2020-02640 and 2020-01450, which are listed on the WLC Chart, and all

fourteen FOIA requests submitted by the University of Iowa listed on the Iowa Chart. In

addition, defendant's motion is granted on Count II and partial summary judgment is entered in

favor of defendant on this claim. Finally, plaintiff's claims in Count I as to the remaining

individual FOIA requests, except as to FOIA Request Number 2020-02603, shall be severed and

dismissed without prejudice from this action.

 An order consistent with this Memorandum Opinion will be entered contemporaneously.

 Date:  March 10, 2024

             _____

             **BERYL A. HOWELL**
             United States District Judge

AO 450 (Rev. 01/09; DC-03/10)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Columbia

**FILED**

MAR 1 2 2024

Washington Lawyers Committee
For Civil Rights And Urban Affairs

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Civil Action No. 23-1328 (BAH)

v.

Department Of Justice

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐ the plaintiff *(name)* _____ recover from the
defendant *(name)* _____ the amount of
_____ dollars ($ _____ ), which includes prejudgment
interest at the rate of _____ %, plus postjudgment interest at the rate of _____ %, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____
_____ recover costs from the plaintiff *(name)* _____

☑ other:  Partial Summary Judgment is entered in favor of defendant on Count II

This action was *(check one)*:

☐ tried by a jury with Judge _____ presiding, and the jury has
rendered a verdict.

☐ tried by Judge _____ without a jury and the above decision
was reached.

☑ decided by Judge BERYL A. HOWELL _____ on a motion for

Partial Motion to Dismiss, or, in the Alternative, For Partial Summary Judgment

Date: ___03/12/2024___

*ANGELA D. CAESAR, CLERK OF COURT*

*Signature of Clerk or Deputy Clerk*