**ORAL ARGUMENT SCHEDULED FOR JANUARY 31, 2025**
**No. 24-5127**

# United States Court of Appeals
# for the District of Columbia Circuit

———————————

WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS,
*Plaintiff-Appellant*,

v.

UNITED STATES DEPARTMENT OF JUSTICE,
*Defendant-Appellee*.

———————————

On Appeal from the United States District Court for the District of Columbia
No. 1:23-cv-01328-BAH (Hon. Beryl A. Howell)

———————————————————————————

**FINAL OPENING BRIEF FOR PLAINTIFF-APPELLANT**

———————————————————————————

Kristin McGough
WASHINGTON LAWYERS' COMMITTEE
   FOR CIVIL RIGHTS & URBAN AFFAIRS
700 Fourteenth Street, NW
Suite 400
Washington, DC 20005
(202) 319-1000

Stephen P. Barry
Blake E. Stafford
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
stephen.barry@lw.com

James D. Friedland
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700

*Counsel for Plaintiff-Appellant*
*Washington Lawyers' Committee for Civil Rights and Urban Affairs*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Washington Lawyers' Committee for Civil Rights and Urban Affairs submits this certificate as to parties, rulings, and related cases.

### A.    Parties and Amici

Plaintiff-Appellant is Washington Lawyers' Committee for Civil Rights and Urban Affairs (WLC).  Defendant-Appellee is the United States Department of Justice.  There were no other parties, intervenors, or amici before the district court, and no intervenors or amici have appeared in this Court.

### B.    Ruling Under Review

WLC appeals the judgment of the district court (Howell, J.) entered on March 12, 2024 (Dkt. 24) and the accompanying memorandum opinion and order entered on March 10, 2024 (Dkt. 22, 23), reproduced at JA152-84.

### C.    Related Cases

This case has not been previously before this Court or any other court (other than the district court).  Counsel for WLC are not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

*/s/ Stephen P. Barry*
Stephen P. Barry

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Plaintiff-Appellant Washington Lawyers' Committee for Civil Rights and Urban Affairs (WLC) states that WLC is a non-profit legal organization. WLC has no parent company, and no public company has a 10% or greater ownership interest in WLC.

**STATEMENT REGARDING ORAL ARGUMENT**

Plaintiff-Appellant respectfully submits that oral argument would materially assist the Court's disposition of this appeal.  This case presents important questions concerning the scope and viability of claims against agencies that persistently violate the statutory disclosure requirements of the Freedom of Information Act, 5 U.S.C. § 552.

## TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ....................................... iii

TABLE OF AUTHORITIES ....................................................................vi

GLOSSARY.............................................................................................x

INTRODUCTION ................................................................................... 1

STATEMENT OF JURISDICTION.............................................................3

STATEMENT OF ISSUES ........................................................................4

STATUTES AND REGULATIONS............................................................4

STATEMENT OF THE CASE....................................................................4

      A.    Legal Background Under FOIA ...........................................4

      B.    BOP's Persistent Noncompliance With FOIA.....................8

      C.    WLC's FOIA Requests .......................................................12

      D.    Procedural History.............................................................13

SUMMARY OF ARGUMENT .................................................................17

STANDING ...........................................................................................18

STANDARD OF REVIEW ......................................................................19

ARGUMENT ........................................................................................19

I.    THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT MUST BE REVERSED ................................................................19

      A.    WLC Established A Valid Policy Or Practice Claim Under FOIA.................................................................................20

      B.    The District Court Erred In Granting Summary Judgment.................23

**Page**

II.   AT A MINIMUM, THE DISTRICT COURT'S DECISION SHOULD
       BE VACATED TO PERMIT DISCOVERY .................................................28

CONCLUSION ........................................................................................................34

# TABLE OF AUTHORITIES[*]

**Page(s)**

## CASES

*Americable International, Inc. v. Department of Navy*,
129 F.3d 1271 (D.C. Cir. 1998)..........................................................................29

*American Center for Law & Justice v. United States Department of State*,
289 F. Supp. 3d 81 (D.D.C. 2018)......................................................................31

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................................29

*Cause of Action Institute v. United States Department of Justice*,
999 F.3d 696 (D.C. Cir. 2021)............................................................................19

*Citizens for Responsibility & Ethics in Washington v. FEC*,
711 F.3d 180 (D.C. Cir. 2013).................................................................5, 6, 26

*In re Clinton*,
973 F.3d 106 (D.C. Cir. 2020)............................................................................32

*\* Convertino v. United States Department of Justice*,
684 F.3d 93 (D.C. Cir. 2012).......................................................................29, 30

*Cruz v. McAleenan*,
931 F.3d 1186 (D.C. Cir. 2019)....................................................................19, 28

*Edmond v. United States Postal Service General Counsel*,
949 F.2d 415 (D.C. Cir. 1991)............................................................................24

*Evans v. Federal Bureau of Prisons*,
951 F.3d 578 (D.C. Cir. 2020)..............................................................19, 25, 26

*First Chicago International v. United Exchange Co.*,
836 F.2d 1375 (D.C. Cir. 1988)..........................................................................29

---

[*]   Authorities upon which we chiefly rely are marked with asterisks.

                                                                    **Page(s)**

*United States ex rel. Folliard v. Goverment Acquisitions, Inc.*,
    764 F.3d 19 (D.C. Cir. 2014) ..................................................................30

*GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*,
    445 U.S. 375 (1980) ..............................................................................5

*Ikossi v. Department of Navy*,
    516 F.3d 1037 (D.C. Cir. 2008) ..........................................................30

\* *Judicial Watch, Inc. v. United States Department of Homeland
    Security*,
    895 F.3d 770 (D.C. Cir. 2018)... 2, 3, 5, 6, 7, 8, 17, 19, 20, 21, 23, 26, 27, 28, 33

*McGehee v. CIA*,
    697 F.2d 1095 (D.C. Cir. 1983) ..........................................................21

\* *Payne Enterprises, Inc. v. United States*,
    837 F.2d 486 (D.C. Cir. 1988) ...........................................8, 20, 21, 23

*Public Citizen v. Department of State*,
    276 F.3d 634 (D.C. Cir. 2002) ............................................................21

*Shapiro v. United States Department of Justice*,
    40 F.4th 609 (D.C. Cir. 2022) ................................................31, 32, 33

*Standley v. Edmonds-Leach*,
    783 F.3d 1276 (D.C. Cir. 2015) ..........................................................19

*United States ex rel. Folliard v. Goverment Acquisitions, Inc.*,
    764 F.3d 19 (D.C. Cir. 2014) ..............................................................30

*Utility Air Regulatory Group v. EPA*,
    573 U.S. 302 (2014) ............................................................................27

*Weisberg v. Webster*,
    749 F.2d 864 (D.C. Cir. 1984) ............................................................31

## STATUTES

5 U.S.C. § 552 ..........................................................................................1

\* 5 U.S.C. § 552(a)(3)(A) ......................................................................1, 6

**Page(s)**

5 U.S.C. § 552(a)(4)(B) ...........................................................................3, 7, 8

* 5 U.S.C. § 552(a)(6)(A)(i) ......................................................................1, 5

5 U.S.C. § 552(a)(6)(A)(i)(III) .......................................................................7

5 U.S.C. § 552(a)(6)(B) .................................................................................1

5 U.S.C. § 552(a)(6)(B)(i) ...........................................................................5, 6

5 U.S.C. § 552(a)(6)(B)(iii) ...........................................................................6

5 U.S.C. § 552(a)(6)(C)(i) ...........................................................................7, 8

5 U.S.C. § 552(a)(6)(C)(ii) .............................................................................8

5 U.S.C. § 552(a)(6)(D)(i) ..............................................................................7

5 U.S.C. § 552(a)(6)(E) ..................................................................................6

5 U.S.C. § 552(a)(7) .......................................................................................6

5 U.S.C. § 552(e) ...........................................................................................7

5 U.S.C. § 552(j)(2)(C) ..................................................................................7

5 U.S.C. § 552(j)(3)(D) ..................................................................................7

5 U.S.C. § 552(k) ...........................................................................................7

5 U.S.C. § 552(k)(5) .......................................................................................7

28 U.S.C. § 1291 ............................................................................................4

28 U.S.C. § 1331 ............................................................................................3

28 C.F.R. § 16.1(c) .........................................................................................8

28 C.F.R. § 513.40 .......................................................................................10

28 C.F.R. § 513.40(b)(3) .............................................................................10

28 C.F.R. § 513.42 .......................................................................................10

**Page(s)**

28 C.F.R. § 513.42(d) ................................................................. 10

28 C.F.R. § 513.60 ...................................................................... 8

28 C.F.R. § 513.61 ...................................................................... 10

28 C.F.R. § 513.61(b) ................................................................. 10

28 C.F.R. § 513.63 ...................................................................... 10

## OTHER AUTHORITIES

Fed. Bureau of Prisons, *Freedom of Information Act FAQs: How Are Requests Processed?*, https://www.bop.gov/foia/#tabs-3 (last visited Aug. 16, 2024) ................................................................. 9

Fed. R. Civ. P. 56(d) ............................................................... 15, 29

Wash. Lawyers' Comm. for Civil Rights & Urban Affairs et al., *Cruel and Usual: An Investigation Into Prison Abuse at USP Thomson* (2023), https://perma.cc/U4WX-CMVY ........................................ 12

# GLOSSARY

| | |
|---|---|
| Baime Decl. | Declaration of Eugene Baime, D. Ct. Dkt. 14-3 (JA60-87) |
| BOP or Bureau | Bureau of Prisons |
| Compl. | Complaint, D. Ct. Dkt. 1 (JA6-21) |
| FOIA | Freedom of Information Act |
| Hart Decl. | Declaration of Margaret Hart, D. Ct. Dkt. 17-2 (JA133-36) |
| Op. | Memorandum Opinion, D. Ct. Dkt. 23 (JA154-83) |
| SMF | Statement of Material Facts |
| WLC | Washington Lawyers' Committee for Civil Rights and Urban Affairs |

## INTRODUCTION

This case concerns the federal Bureau of Prisons' (Bureau or BOP) persistent failure to comply with the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Plaintiff Washington Lawyers' Committee for Civil Rights and Urban Affairs (WLC) is a non-profit legal organization that represents individuals incarcerated in the BOP system whose civil rights have been violated.   To facilitate that representation, WLC attorneys require—and regularly request—records from BOP on behalf of their clients.   These include individual medical, institutional, and disciplinary records.

Per agency policy, BOP will not release these records absent a formal FOIA request.  Yet despite forcing requesting parties to navigate its FOIA's process when seeking documents, BOP itself routinely flouts its own statutory obligations within that process by failing to respond substantively—much less produce responsive documents—within the time limits that FOIA prescribes.

FOIA's time limits are clear and mandatory:  When responding to a records request, the agency "shall" issue a determination regarding the scope of responsive documents and potential exemptions within 20 working days (with an additional 10 days in unusual circumstances), 5 U.S.C. § 552(a)(6)(A)(i), (B); and "shall" produce the responsive records "promptly" thereafter, *id.* § 552(a)(3)(A).   These timing requirements are deliberately strict, and this Court has made clear that agencies

1

cannot have a "policy or practice of ignoring" them. *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 780 (D.C. Cir. 2018).

BOP, however, admits that it does not abide by these requirements. FOIA requests consistently languish at BOP for months or even years with no response at all. In this case alone, WLC identified dozens of its requests—many on behalf of individual clients seeking their own records—that had been pending for several months with no response from BOP. And BOP's own website warns that, as a matter of course, requests that it deems "complex"—a designation applied to *all* of WLC's requests—may go unanswered for anywhere between 9 and 18 months. This regime of FOIA violations regularly leaves incarcerated individuals and those who represent them unable to access critical records necessary to vindicate their civil rights.

These delays are due, at least in part, to BOP's policy of demanding formal FOIA requests for not only systemic records about BOP but also the records of incarcerated individuals. Because of that policy, requests for individual records are funneled into BOP's general FOIA pipeline, where they face an enormous—and growing—backlog. That policy is not necessary. BOP itself represents that it is fully capable of producing certain individual records—such as medical records—within a matter of days, but it purportedly provides that quick turnaround only if the records are sought to support a motion for compassionate release or home confinement. BOP has provided no justification for drawing that distinction or

2

otherwise subjecting routine requests for individual records to months or years of delay.

WLC brought this suit seeking to end BOP's practice of needlessly and persistently violating FOIA's mandates. The district court agreed that WLC stated a valid policy or practice claim under FOIA. But in the same breath, and without permitting any discovery, the court granted summary judgment on that claim. That decision cannot stand. The court entirely ignored BOP's policy of channeling requests for individual records through FOIA and subjecting those requests to prolonged periods of delay. The court also accepted BOP's self-serving assertions that its persistent FOIA violations are attributable to resource constraints, despite facts to the contrary. And the court wrongly refused to allow WLC to take discovery on BOP's practices absent a showing of "bad faith."

All told, BOP's "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses." *Judicial Watch*, 895 F.3d at 778 (citation omitted). Because the district court's decision abdicates that duty and insulates BOP's persistent FOIA violations from scrutiny, this Court should reverse the district court's decision.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). The district court issued a memorandum opinion and order granting

3

summary judgment on WLC's policy or practice claim on March 10, 2024, and entered judgment as to that claim on March 12, 2024. JA152-84 (Dkt. 22, 23, 24). The district court dismissed the remaining claims on April 18, 2024 in a minute order. JA5. WLC filed a timely notice of appeal on May 8, 2024. JA193 (Dkt. 31). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.    Whether the district court erred in granting summary judgment on WLC's claim that BOP's persistent failure to comply with FOIA's time limits is the result of a policy of unnecessarily funneling requests for individual records through FOIA.

2.    Whether the district court abused its discretion in refusing to permit WLC to conduct discovery of BOP's FOIA policies and practices by applying a categorical rule that discovery is not permitted absent evidence of agency bad faith.

## STATUTES AND REGULATIONS

Pertinent statutory and regulatory provisions are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Legal Background Under FOIA

1.    Congress enacted FOIA "'to establish a general philosophy of full agency disclosure,' and to close the 'loopholes which allow agencies to deny

legitimate information to the public.'" *GTE Sylvania, Inc. v. Consumers Union of the U.S., Inc.*, 445 U.S. 375, 385 (1980) (citation omitted).  Congress also recognized that this policy of full disclosure required timely disclosure; after all, "[e]xcessive delay by the agency in its response [to a request for records] is often tantamount to denial." *Judicial Watch*, 895 F.3d at 781 (citation omitted).  To that end, FOIA prescribes a two-step approach for agencies to respond to public records requests and imposes strict timing mandates at each step.

The first step is the agency's determination:  After receiving a records request, the agency "shall . . . determine within 20 [business] days . . . whether to comply with such request," and the agency "shall immediately notify" the requester of its determination.  5 U.S.C. § 552(a)(6)(A)(i).  The agency's determination must "at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013) (*CREW*).

Congress also specifically accounted for "agencies' concerns about the high volume of requests and lack of resources" by allowing "agencies only ten additional days to respond where there [are] 'unusual circumstances.'" *Judicial Watch*, 895 F.3d at 781 (quoting 5 U.S.C. § 552(a)(6)(B)(i)).  These "unusual circumstances" consist of instances in which the agency must review a "voluminous amount of

separate and distinct records" or coordinate with other facilities or governmental entities, and the agency may invoke this ten-day extension "only to the extent reasonably necessary to the proper processing of the particular request[]," and only if the agency provides "written notice" to the requester explaining the circumstances. 5 U.S.C. § 552(a)(6)(B)(i), (iii).

The second step is the agency's production of documents:  After issuing its determination, the agency "shall make the records promptly available." *Id.* § 552(a)(3)(A).   Although what counts as "prompt" may "depend[] on the circumstances," the term "'promptly'" under Section 552(a)(3)(A) "typically would mean within days or a few weeks of a 'determination,' not months or years." *CREW*, 711 F.3d at 188-89; *see Judicial Watch*, 895 F.3d at 784 (rejecting "the idea that taking 'hundreds of days to process requests' is a permissible interpretation of an agency's obligations under FOIA" (citation omitted)).

2.      In addition to establishing these response deadlines, FOIA also requires agencies to "adopt[]"—and, over time, "improv[e]"—"records management systems [that] facilitate 'prompt' responses" and "promote 'efficient and appropriate compliance' with FOIA." *Judicial Watch*, 895 F.3d at 774-75 (citation omitted). Congress set out a series of parameters to aid in that endeavor, requiring agencies to (among other things) establish procedures for status updates and expedited processing, 5 U.S.C. § 552(a)(6)(E), (7); create "multitrack processing of requests,"

*id.* § 552(a)(6)(D)(i); monitor FOIA processes for compliance and efficiency, *id.* § 552(k); and issue periodic reports on FOIA performance, *id.* § 552(e), (k)(5). FOIA is also "innovation-forcing, requiring agencies to consider 'adjustments to . . . practices, policies, personnel, and funding as may be necessary to improve its implementation of' the statute, including 'the timely processing of requests for information.'" *Judicial Watch*, 895 F.3d at 789 (Pillard, J., concurring) (alteration in original) (quoting 5 U.S.C. § 552(j)(2)(C), (3)(D)).

3.    FOIA also "provides procedural protections for a member of the public requesting records from an agency," and chief among them is its creation of a "'judicially enforceable public right to secure [government records] from possibly unwilling official hands.'" *Judicial Watch*, 895 F.3d at 775 (citation omitted). Under FOIA, a requester seeking to challenge an agency's response (or lack thereof) to a particular records request may bring suit in federal district court.  5 U.S.C. § 552(a)(4)(B).  The requester must exhaust an administrative appeal before filing suit if the agency complied with the determination deadlines in Section 552(a)(6); if not, exhaustion is excused.  *Id.* § 552(a)(6)(A)(i)(III), (C)(i).  Once suit is filed, "the court shall determine the matter de novo," and the "burden is on the agency to sustain its action."  *Id.* § 552(a)(4)(B).  If the agency fails to meet its burden, the court has

the power "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.*[1]

Courts in FOIA cases also retain their "inherent injunctive powers." *Judicial Watch*, 895 F.3d at 777. As relevant here, courts may exercise those powers to prevent agencies from employing "'polic[ies] or practice[s]' that 'will impair [a requesting] party's lawful access to information in the future,'" including "agency conduct resulting in long delays in making requested non-exempt records available." *Id.* at 777-78 (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988)).

### B.    BOP's Persistent Noncompliance With FOIA

As a component of the Department of Justice, the Bureau of Prisons maintains its own FOIA regime for disclosing BOP records. 28 C.F.R. §§ 16.1(c), 513.60; JA61 (Baime Decl. ¶ 2 (Dkt. 14-3)). BOP is thus fully responsible for implementing that regime in a way that complies with FOIA's mandates. JA61 (Baime Decl. ¶ 2).

---

[1]    In suits seeking to compel an agency to respond to an individual FOIA request, "the court may retain jurisdiction and allow the agency additional time to complete its review of the records," but only if the agency establishes that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C)(i). The "term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under [FOIA], unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." *Id.* § 552(a)(6)(C)(ii).

For years, however, BOP has consistently flouted FOIA's timing requirements. Upon receipt of a FOIA request, BOP sends the requester a non-substantive "Acknowledgment Letter." JA7 (Compl. ¶ 4 (Dkt. 1)). BOP also typically (but not always) assigns a tracking number. *See* JA62-63 (Baime Decl. ¶ 7); JA135 (Hart Decl. ¶ 15 (Dkt. 17-2)) (noting requests for which BOP "failed to provide tracking numbers"). But after that, FOIA requests regularly languish at BOP for months or years without a substantive response of any kind—far beyond the statutory response deadlines. *See, e.g.*, JA19-21 (Compl. Ex. A).

BOP itself openly acknowledges its practice of FOIA noncompliance: Even for "simple" requests, the agency predicts that it "will take approximately 60 days to respond." JA130 (WLC SMF ¶ 67 (Dkt. 17-1)) (quoting Fed. Bureau of Prisons, *Freedom of Information Act FAQs: How Are Requests Processed?*, https://www.bop.gov/foia/#tabs-3 (last visited Aug. 19, 2024) (*BOP FAQs*)). And for requests that the agency unilaterally deems "complex"—a designation applied to requests for records from BOP institutions—BOP "estimate[s] it will take up to nine months to respond," with some requests taking as long as 18 months. *Id.*; *see BOP FAQs*, *supra* (classifying requests for "[r]ecords from an institution" as "complex"). In the face of these prolonged delays, requesters are often forced to resort to litigation in order to compel a response. *See* JA134-35 (Hart Decl. ¶¶ 13-14, 18). And as the requests pile up, the delays increase. Even today, BOP admits that its backlog is

9

"growing," JA69 (Baime Decl. ¶ 21), and that requesters file "significantly more" lawsuits today than in years prior, JA70 (Baime Decl. ¶ 26).

BOP's increasing backlog is due in part to its policy of channeling virtually all requests through its already-overwhelmed FOIA pipeline—including (as relevant here) requests by attorneys for information about their incarcerated clients. JA133-34 (Hart Decl. ¶¶ 6-7); *see* JA62 (Baime Decl. ¶ 5) (stating that "BOP processes all requests for records by individuals (or entities with proper consent) under [FOIA]"). Under this agency policy, attorneys must submit formal FOIA requests to obtain any records on behalf of their clients, even documents as basic as individual medical, educational, and disciplinary records. JA133-34 (Hart Decl. ¶¶ 6-7); *see* 28 C.F.R. §§ 513.61, 513.63. These individual-records requests are classified as "complex" and added to the backlog of other FOIA requests, where they can languish for months without any response. *See, e.g.*, JA11, 19-21 (Compl. ¶¶ 20-21, Ex. A).[2]

By forcing requests for such basic records through its FOIA pipeline, BOP thwarts the timely production of those records while increasing the backlog and exacerbating the delays for requests seeking other types of records. As a practical

---

[2]    Incarcerated individuals may ask BOP staff for the opportunity to review aspects of their own personal medical and central files. *See* 28 C.F.R. §§ 513.40, 513.42. BOP's regulations, however, contemplate that staff may withhold certain documents, in which case the individual will have to file "a FOIA request for the withheld documents." *Id.* § 513.40(b)(3); *see id.* §§ 513.42(d), 513.61(b).

matter, these delays often make it impossible for attorneys to adequately represent their clients, particularly in actions against the agency for committing civil rights violations. *See* JA10-11 (Compl. ¶¶ 17-19).

This inefficient policy is unnecessary, and BOP has recognized as much in the context of medical records. According to BOP's declaration, since 2020, the agency has "processed outside of FOIA" requests by attorneys "for their client's medical records in support of motions for compassionate release and requests for home confinement." JA67 (Baime Decl. ¶ 18). These requests are still handled by "FOIA staff," but the "process [is] separate from FOIA" and thus does not entail the same lengthy review. *Id.* As a result, the requested records are "usually" produced within 24 hours. *Id.* And by treating such requests separately, they do not contribute to the backlog in BOP's FOIA pipeline. *Id.* Thus, as BOP itself recognizes, processing these requests outside of FOIA "drastically improve[s] attorneys' access to their clients' medical records." *Id.*

According to BOP, however, this process is available only to those seeking "medical records in support of motions for compassionate release and requests for home confinement." *Id.* With that limitation, medical records requested for other reasons (such as records sought to support civil rights claims against BOP), and other individual records (such as educational and disciplinary records) requested for any reason, are routed through BOP's backlogged FOIA pipeline.

### C.    WLC's FOIA Requests

WLC is a non-profit organization dedicated to advancing legal, economic, and social equity through litigation and related public policy advocacy.  JA133 (Hart Decl. ¶ 4).    As part of that mission, WLC routinely represents individuals incarcerated in BOP facilities whose civil and constitutional rights have been violated.  JA133 (Hart Decl. ¶ 5); JA6-7 (Compl. ¶¶ 1-2).  WLC also focuses on systemic issues underlying BOP operations, both at particular BOP facilities and at a national level.  *See, e.g.*, JA19-21 (Compl. Ex. A) (noting ongoing investigations into BOP's systemic practices regarding disability discrimination and mental health services); Wash. Lawyers' Comm. for Civil Rights & Urban Affairs et al., *Cruel and Usual: An Investigation Into Prison Abuse at USP Thomson* (2023), https://perma.cc/U4WX-CMVY (detailing rampant staff abuse at the now-defunct Special Management Unit of the U.S. Penitentiary Thomson).

To that end, WLC must obtain access to BOP records, including its clients' individual records and BOP data relevant to both individual cases and systemic analyses.  JA133-34 (Hart Decl. ¶ 6).  The only mechanism for WLC to obtain these records is by filing FOIA requests through the process described above.  JA134 (Hart Decl. ¶ 7).

BOP has persistently failed to respond to WLC's requests within FOIA's time limits.  Indeed, as part of this lawsuit, WLC identified approximately 40 requests

that had been pending for anywhere from two months to more than three years without a determination on—let alone production of—any of the requested information.  JA12-13, 19-21 (Compl. ¶¶ 26-27, Ex. A).  Most of these requests sought individual records of WLC's clients, and a handful sought systemic information.  *See* JA19-21 (Compl. Ex. A).  Although BOP responded to a few of WLC's FOIA requests during the course of this litigation, 37 requests were still unanswered as of January 2024.  *See* JA148-49 (Joint Status Report 2-3 (Dkt. 21)); JA162 & n.3 (Op. 9 & n.3 (Dkt. 23)).[3]

These delays create significant real-world harm for WLC and its clients. Several of the requests, for example, are requests for records of individual clients who faced horrifying staff abuse while incarcerated at the Special Management Unit of the U.S. Penitentiary Thomson.  JA11-12 (Compl. ¶¶ 20-22).  BOP's failure to timely respond to those requests has significantly hindered WLC's ability to assist these individuals in obtaining relief.

###   D.   Procedural History

1.   On May 10, 2023, WLC filed this lawsuit against BOP, claiming violations of FOIA.  The complaint consists of two counts.  In Count I, WLC asserted that BOP violated FOIA by failing to respond to more than 40 FOIA requests

---

[3]   According to the status tracker on BOP's website, *see* JA65-66 (Baime Decl. ¶ 13), most of these requests are still pending today.

submitted by WLC as far back as 2020.  JA13-15 (Compl. ¶¶ 27, 31, 35-38); *see* JA19-21 (Compl. Ex. A).

In Count II, WLC asserted that BOP employs an unlawful policy or practice of violating FOIA's mandates.  JA15 (Compl. ¶¶ 39-41).  To support that claim, WLC demonstrated that BOP persistently fails to respond to WLC's FOIA requests within the time permitted under the statute.  JA12-14 (Compl. ¶¶ 26-27, 31); *see* JA134 (Hart Decl. ¶¶ 9-11).  Those statutory violations, WLC explained, reflect BOP's policy of unnecessarily funneling requests for individual records through FOIA.  JA10-11 (Compl. ¶ 19); *see* JA133-34 (Hart Decl. ¶¶ 6-7).  Because WLC would undeniably face this policy in the future as it submits more FOIA requests to BOP, WLC sought an injunction that would require BOP to process its requests in a timely manner.

Prior to any discovery, BOP filed a combined motion to dismiss and motion for partial summary judgment as to Count II.  BOP argued that the court should dismiss Count II for failure to exhaust, dismiss Count II for failure to state a claim, or grant summary judgment on Count II for failure to show an unlawful policy or practice.  Because BOP moved in the alternative for summary judgment, BOP submitted declarations from two BOP officials.  WLC's opposition responded to those arguments.  But because the details of BOP's internal FOIA practices are largely in BOP's exclusive possession, WLC also asked the court for the opportunity

to conduct discovery of BOP's policies and practices regarding FOIA processing and training.  *See* Fed. R. Civ. P. 56(d); JA135-36 (Hart Decl. ¶¶ 19-21).

2.    On March 10, 2024, the district court granted summary judgment on Count II in BOP's favor.  JA166-79 (Op. 13-26 (Dkt. 23)).  The court first rejected BOP's primary arguments.  The court held that administrative exhaustion is not a prerequisite to bringing a policy or practice claim.  JA166-73 (Op. 13-20).  The court also held that WLC's allegations stated a viable policy or practice claim.  JA173 n.6 (Op. 20 n.6).

The court then turned to BOP's alternative request for summary judgment. JA173-79 (Op. 20-26).  Although BOP had devoted "minimal airtime" to this request—only "two pages out of its 36-page motion"—the court concluded there was "no genuine dispute as to the existence of any improper policy or practice." JA174 (Op. 21).  The court rested that conclusion entirely on self-serving assertions in BOP's declarations that BOP "receives an extraordinary number of FOIA requests each year"; that BOP processes FOIA requests "'as quickly as it possibly can given [BOP's] resource constraints and its backlog of outstanding FOIA requests'"; and that BOP recently made "improve[ments]" to its FOIA training processes and its FOIA organizational structure.  JA175 (Op. 22) (citing JA64, 68-71 (Baime Decl. ¶¶ 9, 21, 27)).  The court reasoned that those assertions—unsubstantiated by anything beyond the agency's own say-so, and unconnected to any of WLC's

particular requests—"show that BOP does not have a policy or practice of 'repeated, unexplained, and prolonged delay'" in processing FOIA requests.  JA175 (Op. 22) (citation omitted).  The court did not address WLC's challenge to BOP's practice of needlessly channeling requests for individual records into its general FOIA pipeline. On the contrary, despite acknowledging that aspect of WLC's claim elsewhere in its opinion, JA172 (Op. 19), the court ignored the issue entirely in its summary judgment analysis.

Finally, the court denied WLC's request for discovery under Rule 56(d). JA176-79 (Op. 23-26).  The court acknowledged that discovery of "BOP's FOIA processes, training, [and] resource allocation"—the very issues underlying the court's grant of summary judgment—"could 'yield' a lot more information about any and all of those matters."  JA177 (Op. 24).  But the court insisted that discovery is categorically unavailable "[i]n the context of FOIA" without proof of agency "bad faith," which the court found lacking here.  JA175-77 (Op. 22-24).  Accordingly, the court refused to allow WLC to take discovery and granted judgment in BOP's favor as to this claim.  JA179 (Op. 26).  WLC filed a timely notice of appeal.  JA193 (Dkt. 31).[4]

---

[4]    The district court also severed the individual FOIA requests contained in Count I, concluding that WLC would have to bring separate lawsuits to obtain relief for each of those requests. JA179-82 (Op. 26-29).  WLC does not appeal that aspect of the district court's decision.

## SUMMARY OF ARGUMENT

I.      The district court's grant of summary judgment must be reversed.  This Court has made clear that FOIA prohibits agencies from employing any "policy or practice" that "result[s] in long delays in making requested non-exempt records available." *Judicial Watch*, 895 F.3d at 777-78.  In this case, it is undisputed that BOP persistently violates FOIA's statutory time limits, with FOIA requests languishing for months or years without any response.

These persistent statutory violations are caused at least in part by BOP's policy of channeling virtually all document requests through its backlogged FOIA pipeline—including, as relevant here, all requests by legal counsel for individual records of their incarcerated clients.  This policy is not mandated by FOIA or any other statute, and BOP itself admits that it is fully capable of processing requests for certain individual records—such as medical records sought for compassionate-release and home-confinement claims—within a matter of days.  BOP's insistence that other individual-records requests must flow through its general FOIA pipeline, where they will sit unanswered for months or years in violation of FOIA's time limits, is an unjustified policy that warrants relief.

The district court's grant of summary judgment suffers from a series of errors warranting reversal.  The court completely ignored BOP's admitted policy of needlessly channeling requests for individual records through FOIA.  At the same

17

time, the court credited BOP's purported explanation for the prolonged delays—resource limitations—despite BOP's admission that it is able to avoid prolonged delays for certain individual-records requests when it chooses to do so. And while the court noted that BOP has made some improvements to its FOIA processing program, it ignored that even with these improvements, the backlog is still growing. In short, the record shows a BOP policy of unreasonable delay that results in persistent FOIA violations, and BOP failed to establish that it is entitled to judgment as a matter of law on that claim.

II.    At a minimum, this Court should vacate the judgment and permit WLC to take discovery on BOP's FOIA practices. The district court denied discovery by applying a categorical rule that discovery is not permitted in FOIA cases absent a showing of agency bad faith. But that categorical rule applies in cases challenging the adequacy of an agency's search for a particular record. This Court has never applied it to a policy or practice claim, and there is no reason to do so here. Indeed, applying it in this context effectively allows BOP to paper over its own persistent violations of FOIA with a self-serving affidavit free from any adversarial testing. That result is untenable, and this Court should reject it.

## STANDING

WLC has standing to challenge the Bureau's practices of violating FOIA because WLC regularly requests records from the Bureau pursuant to FOIA and will

18

continue to suffer harm as its requests—many of which are still pending—are subjected to BOP's unlawful practices. *See Cause of Action Inst. v. U.S. Dep't of Justice*, 999 F.3d 696, 703-04 (D.C. Cir. 2021).

## STANDARD OF REVIEW

This Court "review[s] the district court's grant of summary judgment *de novo*," *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020), and reviews the district court's "decision to deny discovery under Rule 56(d) for abuse of discretion," *Cruz v. McAleenan*, 931 F.3d 1186, 1191 (D.C. Cir. 2019). "Because a district court by definition abuses its discretion when it makes an error of law, the abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Standley v. Edmonds-Leach*, 783 F.3d 1276, 1284 (D.C. Cir. 2015) (citation omitted); *see Cruz*, 931 F.3d at 1193.

## ARGUMENT

### I.    THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT MUST BE REVERSED

Under this Court's precedent, "agency conduct resulting in long delays in making requested non-exempt records available may serve as the basis for a policy or practice claim." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 777-78 (D.C. Cir. 2018). In this case, WLC established a valid claim: Because of BOP's discretionary decision to channel virtually all records requests into its FOIA pipeline, BOP persistently fails to respond to requests for records within

19

FOIA's time limits—and often not until months or years after the request was made. BOP's self-serving declarations do not refute this policy but instead confirm its existence. Because BOP has not established that it is entitled to judgment as a matter of law on this claim, this Court should reverse the district court's grant of summary judgment.

### A.     WLC Established A Valid Policy Or Practice Claim Under FOIA

This Court has long recognized that, in addition to claims seeking relief for specific requests made under FOIA, a plaintiff may assert a "claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988). The policy itself need not be formal or explicitly violate FOIA; even "informal agency conduct" that results in a "persistent failure to adhere to FOIA's requirements" is actionable. *Judicial Watch*, 895 F.3d at 777-78, 780.

As relevant here, FOIA "mandate[s] that agencies 'shall' make requested records 'promptly available,'" *id.* at 776, and it imposes a series of timing requirements and obligations to facilitate that mandate, *see supra* at 5-6. Accordingly, one "settled" "basis for a policy or practice claim" is "agency conduct resulting in long delays in making requested non-exempt records available." *Id.* at 777-78. Indeed, "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these

abuses." *Id.* at 778 (quoting *Payne*, 837 F.2d at 494); *see also, e.g.*, *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983) (holding that an agency's internal procedures for processing documents may violate FOIA where the "net effect" is "significantly to increase the amount of time [the requester] must wait to obtain them"); *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 643 (D.C. Cir. 2002) (deeming processing policy "unreasonable" where "the policy's net result is to increase processing time").[5]

Here, it is undisputed that BOP persistently violates FOIA's statutory time limits. WLC identified more than three dozen FOIA requests that BOP failed to answer within the 20-day statutory period. JA19-21 (Compl. Ex. A); JA134 (Hart Decl. ¶¶ 9-11). In many cases, those requests have been pending for months or years. *See* JA19-21 (Compl. Ex. A). And this is hardly a surprise—BOP itself tells potential requesters that they may have to wait as long as 18 months for a response. JA130 (WLC SMF ¶ 67).

---

[5]   At one point in its opinion, the district court suggested that the question is "whether BOP has a policy or practice of *intentionally* failing to comply with the agency's FOIA obligations." JA176 (Op. 23) (emphasis added). This Court in *Judicial Watch* specifically rejected the argument that "egregious, intentional agency conduct" is necessary to establish a policy or practice claim. 895 F.3d at 781 (citation omitted). Rather, unless the agency's FOIA violations reflect "isolated mistakes by agency officials," the agency's persistent "failure to abide by the terms of [FOIA]" is sufficient. *Id.* at 778 (quoting *Payne*, 837 F.2d at 491).

These persistent statutory violations are caused at least in part by BOP's policy of channeling virtually all document requests through its FOIA process. As relevant here, that includes requests by legal counsel seeking only their individual client's records. JA128 (WLC SMF ¶ 55); JA133-34 (Hart Decl. ¶¶ 6-7). BOP's policy of requiring FOIA requests for these individual records is not mandated by FOIA or any other federal statute. By sweeping this large volume of routine requests into its FOIA pipeline, BOP is adding to its enormous FOIA backlog in a way that delays its responses to *all* record requests for months or even years.

BOP has never disputed the existence of this policy. Likewise, BOP has effectively conceded that it has no obligation to treat all record requests in this way. According to BOP, the agency has implemented a process "separate from FOIA" that allows attorneys to "submit a request for their clients' medical records in support of motions for compassionate release and requests for home confinement." JA67 (Baime Decl. ¶ 18); *see* JA138 (BOP Reply SMF ¶ 55 (Dkt. 19-1)). These requests are "processed outside of FOIA" with a quick turnaround of approximately 24 hours—a response time that is "drastically" shorter than the extreme delays inherent in BOP's FOIA process. JA67 (Baime Decl. ¶ 18).

This regime confirms that BOP is capable of providing individual medical records within FOIA's time limits. But according to BOP, this process is available only to those seeking medical records to assert claims for "compassionate release"

22

and "home confinement." *Id.*  With that limitation, requests for any other reason—including, conspicuously, claims that might be advanced in litigation *against BOP*—are delayed for months or years, well beyond what FOIA allows.  Worse, BOP admits to diverting its purportedly inadequate FOIA resources to completing these compassionate-release and home-confinement requests, *id.*, resulting in yet *further* delays on other FOIA requests.  And BOP also admits that the FOIA backlog it has created is still "grow[ing]."  JA69 (Baime Decl. ¶ 21).  Thus, WLC and all other attorneys adverse to BOP can expect even longer delays for all future record requests—with no relief in sight.

BOP's policy of unnecessarily (and selectively) channeling individual-records requests through FOIA is precisely the type of "illicit practice of delay" that "courts have a duty to prevent."  *Judicial Watch*, 895 F.3d at 778 (quoting *Payne*, 837 F.2d at 494-95).  The exact contours of this policy—and whether BOP can make "adjust[ments]" to its FOIA practices so as "to conform to FOIA's mandate to make requested non-exempt records 'promptly available,'" *id.* at 784—can be flushed out in discovery.  But the record simply does not establish that BOP is entitled to judgment as a matter of law at such an early stage in these proceedings.

## B.    The District Court Erred In Granting Summary Judgment

Despite finding that WLC stated a viable policy or practice claim, the district court concluded—without allowing any discovery at all—that "the facts established

in [BOP's] declarations" leave "'no genuine dispute as to the existence of any improper policy or practice.'"   JA173-74 (Op. 20-21) (citation omitted).   That conclusion is incorrect.

For one thing, the district court ignored BOP's admitted policy of needlessly channeling requests for individual records through its lengthy FOIA review process. The court instead focused entirely on "BOP's admitted delays in processing FOIA requests" generally.   JA176 (Op. 23).   But WLC squarely challenged BOP's unjustified channeling policy both in its complaint, JA9-11 (Compl. ¶¶ 12, 19), and in its summary judgment opposition, JA112-13 (Dkt. 17, at 25-26).   And the district court itself acknowledged this policy elsewhere in its opinion, noting WLC's claim that "BOP's alleged policy of treating all record requests the same, without differentiating requests from counsel, like [WLC], in their active representation of clients in BOP's custody . . . creates and contributes to delays in response to all FOIA requests."   JA172 (Op. 19).   In granting summary judgment, however, the district court ignored this policy altogether.   *See* JA173-79 (Op. 20-26).   Because the district court "failed to consider [this] theory" in its analysis, the Court can and should reverse on that basis alone.   *Edmond v. U.S. Postal Serv. Gen. Couns.*, 949 F.2d 415, 421 (D.C. Cir. 1991).

Even on its own terms, the district court's reliance on BOP's declarations is unsustainable.   The district court relied on three categories of statements from those

declarations, but none establishes beyond factual dispute BOP's entitlement to judgment as a matter of law—particularly because, even if credited, those statements do not refute the existence of the channeling policy that appears to be responsible, at least in part, for the agency's growing FOIA backlog.

*First*, the court pointed to several statements that are nothing more than conclusory denials and platitudes, suggesting that BOP "'works tirelessly to promote governmental transparency,'" and that BOP "den[ies] that [it] has such a claimed policy or practice of violating [FOIA]." JA174-76 (Op. 21-23) (quoting JA64 (Baime Decl. ¶ 9)). Any agency could make such generic proclamations at any time. If these bare assertions were sufficient to justify across-the-board, years-long delays as a matter of law, agencies' FOIA compliance would be effectively discretionary. That is why such broad-brushed pronouncements are insufficient under this Court's precedent, which has "long held that '[agency] affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping.'" *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 586 (D.C. Cir. 2020) (citation omitted).

*Second*, the district court pointed to BOP's assertions that it processes requests "as quickly as it possibly can" in light of "resource constraints and its backlog of outstanding FOIA requests." JA175 (Op. 22) (quoting JA64 (Baime Decl. ¶ 9)). These assertions cannot sustain summary judgment because they are "called into

question by contradictory evidence in the record." *Evans*, 951 F.3d at 584 (citation omitted).  As explained above, the record shows that BOP is capable, with its current resources, of timely processing certain requests for individual records by removing them from its backlogged FOIA pipeline.  BOP does not explain why this same process cannot be applied to other individual-records requests, nor does it dispute that its policy of channeling such requests through FOIA exacerbates the backlog. BOP's assertion that it processes all record requests as quickly as possible is, at best, factually disputed.

More fundamentally, BOP's resource constraints would only affect the scope of injunctive relief—an issue not before this Court.  To be sure, *Judicial Watch* makes clear that an agency's "staffing shortages and work overload may not render injunctive relief inappropriate."  895 F.3d at 783.  After all, resource-constrained or not, FOIA "does not allow agencies to keep FOIA requests bottled up for months or years on end while avoiding any judicial oversight." *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 190 (D.C. Cir. 2013).  When resource constraints make it impossible for an agency to strictly comply with the statute's mandates, however, the court can order "tailored injunctive relief" designed to ensure that the agency follows its obligations "as quickly as possible." *Judicial Watch*, 895 F.3d at 783-84; *see id.* at 784 (noting that district courts are "obligated" to "monitor when necessary an agency's progress in adjusting its records management systems to

enable it to comply with FOIA").  What courts cannot do is rely on assertions of resource constraints as proof that the agency is not "violating the statute" in the first place.  JA176 (Op. 23); *cf. Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 327 (2014) ("An agency confronting resource constraints may change its own conduct, but it cannot change the law.").

*Third*, the district court pointed to the declarations' references to two recent BOP "improvements"—additional training and a centralized FOIA office.  JA175-76, 179 (Op. 22-23, 26) (citing JA68-71 (Baime Decl. ¶¶ 21, 27)).  The court did not explain how these purported improvements entitle BOP to judgment as a matter of law.  BOP does not assert that these improvements have had any appreciable effect on reducing delays; to the contrary, BOP admits that its FOIA "backlog" is still "growing."   JA69 (Baime Decl. ¶ 21).   And while BOP implemented these improvements in January 2023, JA159 (Op. 6), BOP admitted more than a year later that it still had not resolved 37 of WLC's requests—many of which had *already* been pending for months or years by that time.  *See* JA162 (Op. 9) (citing JA148-49 (Joint Status Report 2-3)); JA19-21 (Compl. Ex. A).  Thus, BOP is still persistently failing to adhere to FOIA's requirements, and will continue to "interfere with [WLC's] right under FOIA to promptly obtain non-exempt records from the agency in the future." *Judicial Watch*, 895 F.3d at 780.

27

Of course, as with its assertions about resources, BOP's assertions about process improvements may be relevant in determining appropriate injunctive relief. *Cf. Judicial Watch*, 895 F.3d at 783 (noting that an agency's "'discontinuance'" of an unlawful practice and "'expressed intent to comply'" may be considered as "[f]actors" when awarding injunctive relief (citation omitted)). But as with the other points discussed above, the fact that the agency made some enhancements does not excuse the policy at issue (much less cure the district court's error in failing to consider it) or demonstrate that BOP is entitled to judgment as a matter of law. The district court's grant of summary judgment must be reversed.

## II.    AT A MINIMUM, THE DISTRICT COURT'S DECISION SHOULD BE VACATED TO PERMIT DISCOVERY

Because BOP failed to establish that it is entitled to judgment as a matter of law, the Court should reverse the decision below. But the district court compounded the error by granting summary judgment without permitting WLC to take any discovery, reasoning that discovery in this case is not permitted absent a showing of "bad faith." JA177 (Op. 24). That extreme rule does not apply here. Because the district court applied the wrong legal rule, its denial of discovery necessarily constitutes an abuse of discretion. *Cruz v. McAleenan*, 931 F.3d 1186, 1193 (D.C. Cir. 2019). At a minimum, therefore, this Court should vacate the decision below and remand the case to the district court with an order to allow discovery.

28

A.     This Court has repeatedly held that "summary judgment ordinarily 'is proper only after the plaintiff has been given adequate time for discovery.'" *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1998) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)); *see Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012) ("[S]ummary judgment is premature unless all parties have "had a full opportunity to conduct discovery.'" (citation omitted)).  This rule follows from the standards that apply at the summary judgment stage:   Because "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment," it is assumed that "the plaintiff has had a full opportunity to conduct discovery."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Here, after BOP moved for summary judgment at the outset of this case, prior to any discovery, WLC sought relief under Rule 56(d).  That rule permits a court to defer or deny a motion for summary judgment and allow for discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  This Court has held that Rule 56(d) relief is warranted when the non-movant (1) "outline[s] the particular facts the non-movant intends to discover and describe[s] why those facts are necessary to the litigation"; (2) "explain[s] 'why the non-movant could not produce the facts in opposition to the motion for summary judgment'"; and

29

(3) "show[s] the information is in fact discoverable." *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C. Cir. 2014) (internal alterations omitted) (quoting *Convertino*, 684 F.3d at 99-100).

These criteria are amply satisfied here. WLC seeks discovery of facts regarding the breadth of BOP's statutory noncompliance, how FOIA requests are functionally handled and prioritized on a day-to-day basis, as well as the substance of the vaguely described FOIA "trainings" and any guidance the agency provides to employees. *See* JA135-36 (Hart Decl. ¶ 19). These are precisely the kinds of facts that the district court considered in granting summary judgment. JA175-76 (Op. 22-23). Moreover, discovery would reveal the facts surrounding BOP's policy of channeling some individual-records requests through its FOIA pipeline, including the extent to which individual records are routed through FOIA; the reason for implementing this policy; and why BOP seemingly created an exception to this policy for compassionate-release and home-confinement claims. Because this information comes from internal BOP documents, WLC is limited in its ability to produce this information without discovery. And this information is fully discoverable. Ultimately, application of Rule 56(d) in this case is "self-evident." *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008); *cf. Folliard*, 764 F3d at 27 ("[W]hen the facts giving rise to the cause of action are in the sole possession

of the moving party, courts should grant the Rule 56(d) request 'almost as matter of course.'" (citation omitted)).

B.     Rather than apply that straightforward analysis, the district court claimed that the first Rule 56(d) criterion is saddled with a "FOIA-specific standard" under which discovery may be ordered "'only'" if there is evidence of "'bad faith.'" JA177 (Op. 24) (quoting *Shapiro v. U.S. Dep't of Justice*, 40 F.4th 609, 615 (D.C. Cir. 2022)).  This FOIA-specific gloss on Rule 56(d) does not apply to the policy or practice claim at issue in this case.

In general, "[w]hen Congress intended to create[] exceptions to regular civil procedures in FOIA litigation, it has stated these exceptions specifically." *Weisberg v. Webster*, 749 F.2d 864, 868 (D.C. Cir. 1984).  This Court, however, has carved out an exception for discovery in cases challenging the substance of an agency's response to an individual FOIA request.  In those "mine-run FOIA cases," the questions are "whether the 'agency has conducted a thorough search' and given 'reasonably detailed explanations why any withheld documents fall within an exemption.'" *Am. Ctr. for Law & Justice v. U.S. Dep't of State*, 289 F. Supp. 3d 81, 92 (D.D.C. 2018) (citation omitted).  Particularly in cases challenging "the adequacy of [the agency's] search," this Court has held that discovery should be "'rare'"— summary judgment may be granted based on a sufficiently detailed affidavit demonstrating the adequacy of the search, and "courts should generally order

31

[discovery] only 'where there is evidence—either at the affidavit stage or (in rarer cases) before—that the agency acted in bad faith in conducting the search.'" *Shapiro*, 40 F.4th at 612-13, 615 (quoting *In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020)).

This case does not involve an inadequate search. And while the district court seemed to believe that this bad faith requirement applied in *all* FOIA actions, JA177 (Op. 24), this Court has never applied that exception in a policy or practice case like this one. Nor would it make any sense to do so for the first time here, given the obvious differences between inadequate-search claims and policy or practice claims.[6]

In lawsuits challenging an agency's search, the "only [question is] whether 'the *search* for the requested documents was *adequate*.'" *Shapiro*, 40 F.4th at 613 (citation and internal alteration omitted). Thus, once the agency produces an affidavit that "reasonably detail[s]" its search efforts—by specifying "the search terms," the "type of search performed," and the "files" that were searched—the sole question for the court is whether the efforts specified in the affidavit are enough to be deemed "adequate" under FOIA. *Id.* at 612-13 (citation omitted). Factual

---

[6] Although this Court's opinions refer to a presumption against discovery "in a FOIA case," *Shapiro*, 40 F.4th at 615 (citation omitted), this shorthand has always been applied in mine-run FOIA cases challenging either insufficient searches or exemptions.

discovery by the plaintiff is unnecessary absent some evidence that the "agency acted in bad faith *in conducting the search*" that would impugn the affidavit's representations.  *Id.* at 615 (emphasis added) (citation omitted).

This case presents a very different question.  All agree that BOP persistently violates FOIA's statutory deadlines when responding to FOIA requests.  The question is whether and to what extent these persistently "long delays" are the result of "agency conduct" constituting a systematic policy or practice.  *Judicial Watch*, 895 F.3d at 777-78.  Applying a presumption against discovery, however, would allow the agency to dictate its own answer to that question—and paper over its own persistent violations of federal law—with a self-serving affidavit free from adversarial testing.  This conclusion thwarts the very purpose of providing the public information access in the first instance.

The more sensible and fairer approach is simply to apply the traditional criteria for discovery without any thumb on the scale.  And as explained above, those criteria are amply satisfied in this case.  Thus, if the Court does not reverse the district court's grant of summary judgment, the Court should at least vacate the judgment to allow WLC to take discovery.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed or, at a minimum, vacated, and the case remanded for further proceedings.

Dated:  December 2, 2024           Respectfully submitted,

                                     */s/ Stephen P. Barry*

Kristin McGough                           Stephen P. Barry
WASHINGTON LAWYERS' COMMITTEE     Blake E. Stafford
   FOR CIVIL RIGHTS & URBAN AFFAIRS    LATHAM & WATKINS LLP
700 Fourteenth Street, NW             555 Eleventh Street, NW
Suite 400                               Suite 1000
Washington, DC 20005                Washington, DC 20004
(202) 319-1000                       (202) 637-2200
                                    stephen.barry@lw.com

                                    James D. Friedland
                                    LATHAM & WATKINS LLP
                                    330 North Wabash Avenue
                                    Suite 2800
                                    Chicago, IL 60611
                                    (312) 876-7700

*Counsel for Plaintiff-Appellant*
*Washington Lawyers' Committee for Civil Rights and Urban Affairs*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,783 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

This brief complies with the typeface requirements and type-style requirements of Federal Rule of Appellate Procedure 32(a) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:  December 2, 2024                     */s/ Stephen P. Barry*
                                            Stephen P. Barry

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2024, the foregoing brief was electronically filed with the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system.  All parties are represented by registered CM/ECF users and will be served by the CM/ECF system.

                                            */s/ Stephen P. Barry*
                                            Stephen P. Barry

**ADDENDUM**

**Pursuant to D.C. Cir. R. 28(a)(5)**

**ADDENDUM**

**TABLE OF CONTENTS**

| Description | Page |
|---|---|
| 5 U.S.C. § 552(a)(3)(A)-(D), (a)(4)(B), (a)(6)-(8), (j) | ADD-1 |
| 28 C.F.R. § 513.60 | ADD-8 |
| 28 C.F.R. § 513.61 | ADD-9 |
| 28 C.F.R. § 513.63 | ADD-10 |

**5 U.S.C. § 552(a)(3), (a)(4)(B), (a)(6)-(8), (j)**

**§ 552. Public information; agency rules, opinions, orders, records, and proceedings**

(a) Each agency shall make available to the public information as follows:

\* \* \*

(3)(A) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

(B) In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.  Each agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section.

(C) In responding under this paragraph to a request for records, an agency shall make reasonable efforts to search for the records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system.

(D) For purposes of this paragraph, the term "search" means to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request.

\* \* \*

(4)(B) On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.  In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.  In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B).

\* \* \*

(6)(A) Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall—

(i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of—

(I) such determination and the reasons therefor;

(II) the right of such person to seek assistance from the FOIA Public Liaison of the agency; and

(III) in the case of an adverse determination—

(aa) the right of such person to appeal to the head of the agency, within a period determined by the head of the agency that is not less than 90 days after the date of such adverse determination; and

(bb) the right of such person to seek dispute resolution services from the FOIA Public Liaison of the agency or the Office of Government Information Services; and

(ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

The 20-day period under clause (i) shall commence on the date on which the request is first received by the appropriate component of the agency, but in any event not later than ten days after the request is first received by any component of the agency that is designated in the agency's regulations under this section to receive requests under this section. The 20-day period shall not be tolled by the agency except—

(I) that the agency may make one request to the requester for information and toll the 20-day period while it is awaiting such information that it has reasonably requested from the requester under this section; or

(II) if necessary to clarify with the requester issues regarding fee assessment. In either case, the agency's receipt of the requester's response to the agency's request for information or clarification ends the tolling period.

(B)(i) In unusual circumstances as specified in this subparagraph, the time limits prescribed in either clause (i) or clause (ii) of subparagraph (A) may be

extended by written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched.  No such notice shall specify a date that would result in an extension for more than ten working days, except as provided in clause (ii) of this subparagraph.

(ii) With respect to a request for which a written notice under clause (i) extends the time limits prescribed under clause (i) of subparagraph (A), the agency shall notify the person making the request if the request cannot be processed within the time limit specified in that clause and shall provide the person an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request.  To aid the requester, each agency shall make available its FOIA Public Liaison, who shall assist in the resolution of any disputes between the requester and the agency, and notify the requester of the right of the requester to seek dispute resolution services from the Office of Government Information Services.  Refusal by the person to reasonably modify the request or arrange such an alternative time frame shall be considered as a factor in determining whether exceptional circumstances exist for purposes of subparagraph (C).

(iii) As used in this subparagraph, "unusual circumstances" means, but only to the extent reasonably necessary to the proper processing of the particular requests—

(I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;

(II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or

(III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

(iv) Each agency may promulgate regulations, pursuant to notice and receipt of public comment, providing for the aggregation of certain requests by the same requestor, or by a group of requestors acting in concert, if the agency reasonably believes that such requests actually constitute a single request, which would otherwise satisfy the unusual circumstances specified in this subparagraph, and

the requests involve clearly related matters.    Multiple requests involving unrelated matters shall not be aggregated.

(C)(i) Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.  If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.  Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request.    Any notification of denial of any request for records under this subsection shall set forth the names and titles or positions of each person responsible for the denial of such request.

(ii) For purposes of this subparagraph, the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

(iii) Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) under clause (ii) after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

(D)(i) Each agency may promulgate regulations, pursuant to notice and receipt of public comment, providing for multitrack processing of requests for records based on the amount of work or time (or both) involved in processing requests.

(ii) Regulations under this subparagraph may provide a person making a request that does not qualify for the fastest multitrack processing an opportunity to limit the scope of the request in order to qualify for faster processing.

(iii) This subparagraph shall not be considered to affect the requirement under subparagraph (C) to exercise due diligence.

(E)(i) Each agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records—

(I) in cases in which the person requesting the records demonstrates a compelling need; and

(II) in other cases determined by the agency.

(ii) Notwithstanding clause (i), regulations under this subparagraph must ensure—

(I) that a determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request; and

(II) expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing.

(iii) An agency shall process as soon as practicable any request for records to which the agency has granted expedited processing under this subparagraph. Agency action to deny or affirm denial of a request for expedited processing pursuant to this subparagraph, and failure by an agency to respond in a timely manner to such a request shall be subject to judicial review under paragraph (4), except that the judicial review shall be based on the record before the agency at the time of the determination.

(iv) A district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request.

(v) For purposes of this subparagraph, the term "compelling need" means—

(I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

(II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

(vi) A demonstration of a compelling need by a person making a request for expedited processing shall be made by a statement certified by such person to be true and correct to the best of such person's knowledge and belief.

(F) In denying a request for records, in whole or in part, an agency shall make a reasonable effort to estimate the volume of any requested matter the provision of which is denied, and shall provide any such estimate to the person making the request, unless providing such estimate would harm an interest protected by the exemption in subsection (b) pursuant to which the denial is made.

(7) Each agency shall—

(A) establish a system to assign an individualized tracking number for each request received that will take longer than ten days to process and provide to each person making a request the tracking number assigned to the request; and

(B) establish a telephone line or Internet service that provides information about the status of a request to the person making the request using the assigned tracking number, including—

(i) the date on which the agency originally received the request; and

(ii) an estimated date on which the agency will complete action on the request.

(8)(A) An agency shall—

(i) withhold information under this section only if—

(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

(II) disclosure is prohibited by law; and

(ii)(I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and

(II) take reasonable steps necessary to segregate and release nonexempt information; and

(B) Nothing in this paragraph requires disclosure of information that is otherwise prohibited from disclosure by law, or otherwise exempted from disclosure under subsection (b)(3).

\* \* \*

(j)(1) Each agency shall designate a Chief FOIA Officer who shall be a senior official of such agency (at the Assistant Secretary or equivalent level).

(2) The Chief FOIA Officer of each agency shall, subject to the authority of the head of the agency—

(A) have agency-wide responsibility for efficient and appropriate compliance with this section;

(B) monitor implementation of this section throughout the agency and keep the head of the agency, the chief legal officer of the agency, and the Attorney General appropriately informed of the agency's performance in implementing this section;

(C) recommend to the head of the agency such adjustments to agency practices, policies, personnel, and funding as may be necessary to improve its implementation of this section;

(D) review and report to the Attorney General, through the head of the agency, at such times and in such formats as the Attorney General may direct, on the agency's performance in implementing this section;

(E) facilitate public understanding of the purposes of the statutory exemptions of this section by including concise descriptions of the exemptions in both the agency's handbook issued under subsection (g), and the agency's annual report on this section, and by providing an overview, where appropriate, of certain general categories of agency records to which those exemptions apply;

(F) offer training to agency staff regarding their responsibilities under this section;

(G) serve as the primary agency liaison with the Office of Government Information Services and the Office of Information Policy; and

(H) designate 1 or more FOIA Public Liaisons.

(3) The Chief FOIA Officer of each agency shall review, not less frequently than annually, all aspects of the administration of this section by the agency to ensure compliance with the requirements of this section, including—

(A) agency regulations;

(B) disclosure of records required under paragraphs (2) and (8) of subsection (a);

(C) assessment of fees and determination of eligibility for fee waivers;

(D) the timely processing of requests for information under this section;

(E) the use of exemptions under subsection (b); and

(F) dispute resolution services with the assistance of the Office of Government Information Services or the FOIA Public Liaison.

* * *

## 28 C.F.R. § 513.60

### § 513.60. Freedom of Information Act requests.

Requests for any Bureau record (including Program Statements and Operations Memoranda) ordinarily shall be processed pursuant to the Freedom of Information Act, 5 U.S.C. 552. Such a request must be made in writing and addressed to the Director, Federal Bureau of Prisons, 320 First Street, NW., Washington, D.C. 20534. The requester shall clearly mark on the face of the letter and the envelope "FREEDOM OF INFORMATION REQUEST," and shall clearly describe the records sought. See §§ 513.61 through 513.63 for additional requirements.

## 28 C.F.R. § 513.61

**§ 513.61. Freedom of Information Act requests by inmates.**

(a) Inmates are encouraged to use the simple access procedures described in § 513.40 to review disclosable records maintained in his or her Inmate Central File.

(b) An inmate may make a request for access to documents in his or her Inmate Central File or Medical File (including documents which have been withheld from disclosure during the inmate's review of his or her Inmate Central File pursuant to § 513.40) and/or other documents concerning the inmate which are not contained in the Inmate Central File or Medical File. Staff shall process such a request pursuant to the applicable provisions of the Freedom of Information Act, 5 U.S.C. 552.

(c) The inmate requester shall clearly mark on the face of the letter and on the envelope "FREEDOM OF INFORMATION ACT REQUEST", and shall clearly describe the records sought, including the approximate dates covered by the record. An inmate making such a request must provide his or her full name, current address, date and place of birth. In addition, if the inmate requests documents to be sent to a third party, the inmate must provide with the request an example of his or her signature, which must be verified and dated within three (3) months of the date of the request.

## 28 C.F.R. § 513.63

**§ 513.63. Freedom of Information Act requests on behalf of an inmate or former inmate.**

A request for records concerning an inmate or former inmate made by an authorized representative of that inmate or former inmate will be treated as in § 513.61, on receipt of the inmate's or former inmate's written authorization. This authorization must be dated within three (3) months of the date of the request letter. Identification data, as listed in 28 CFR 16.41, must be provided.