**ORAL ARGUMENT SCHEDULED FOR JANUARY 31, 2025**

**No. 24-5127**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS,

Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF JUSTICE,

Defendant-Appellee.

————————————

On Appeal from the United States District Court
for the District of Columbia

————————————

**BRIEF FOR APPELLEE**

————————————

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

MARK B. STERN
THOMAS PULHAM
*Attorneys, Appellate Staff*
*Civil Division, Room 7323*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4332*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.    Parties and Amici

The parties before the district court and this Court are plaintiff-appellant Washington Lawyers' Committee for Civil Rights and Urban Affairs; and defendant-appellee U.S. Department of Justice.  There are no amici.

### B.    Rulings Under Review

The rulings under review (issued by Judge Beryl A. Howell) are the partial summary judgment entered on March 12, 2024 (Dkt. No. 24), and the opinion and order entered on March 10, 2024 (Dkt. Nos. 22, 23).  The district court's opinion is available on Westlaw at 2024 WL 1050498.

### C.    Related Cases

This case has not previously been before this Court.  Counsel for appellee is not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

*/s/ Thomas Pulham*
Thomas Pulham

# TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION ............................................................................... 1

STATEMENT OF JURISDICTION ............................................... 2

STATEMENT OF THE ISSUES .................................................... 3

PERTINENT STATUTES AND REGULATIONS .................... 3

STATEMENT OF THE CASE ........................................................ 3

    A.    Statutory and Regulatory Background ................................... 3

    B.    Factual Background ................................................................ 10

SUMMARY OF ARGUMENT ..................................................... 22

STANDARD OF REVIEW ........................................................... 25

ARGUMENT ................................................................................... 25

I.    The District Court Properly Rejected WLC's Policy-or-Practice Claim ........................................................................... 25

    A.    A Policy-or-Practice Claim Based on Delay Requires an Extraordinary Showing of Lack of Good Faith and Diligence ............................................................................... 25

    B.    The District Court Correctly Granted Summary Judgment to the Bureau ....................................................... 31

    C.    WLC Fails to Identify Any Error in the District Court's Ruling. .................................................................................... 40

II.    The District Court Correctly Denied WLC's Motion for Discovery ....................................................................................... 45

CONCLUSION ............................................................................49

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                              **Page(s)**

*Anderson v. Federal Bureau of Prisons*,
   806 F. Supp. 2d 121 (D.D.C. 2011) ..................................... 38

*Center for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*,
   874 F.3d 287 (D.C. Cir. 2017) ..................................... 29, 30

*Citizens for Responsibility & Ethics in Washington v.
Federal Election Comm'n*,
   711 F.3d 180 (D.C. Cir. 2013) ...................... 2, 4, 5, 23, 26, 27, 41, 42

*Citizens for Responsibility & Ethics in Washington v.
U.S. Dep't of Justice*,
   846 F.3d 1235 (D.C. Cir. 2017) ..................................... 3, 27

*Clinton, In re*,
   973 F.3d 106 (D.C. Cir. 2020) ..................................... 47, 48

*Evans v. Federal Bureau of Prisons*,
   951 F.3d 578 (D.C. Cir. 2020) ..................................... 31

*Freedom Watch, Inc. v. National Sec. Agency*,
   783 F.3d 1340 (D.C. Cir. 2015) ..................................... 48

*Goland v. CIA*,
   607 F.2d 339 (D.C. Cir. 1978) ..................................... 2, 23, 42

*Hidalgo v. FBI*,
   344 F.3d 1256 (D.C. Cir. 2003) ..................................... 4

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
   895 F.3d 770 (D.C. Cir. 2018) ... 1, 20, 22, 23, 30, 31, 37, 38, 39, 41, 48

*Kissinger v. Reports Comm. for Freedom of the Press*,
   445 U.S. 136 (1980) ..................................... 42

*McGehee v. CIA*,
   697 F.2d 1095 (D.C. Cir. 1983) ..................................... 41

*Meeropol v. Meese*,
   790 F.2d 942 (D.C. Cir. 1986) ..................................... 46

*Military Audit Project v. Casey*,
  656 F.2d 724 (D.C. Cir. 1981) ........................................................... 47

*Nation Magazine v. U.S. Customs Serv.*,
  71 F.3d 885 (D.C. Cir. 1995) .............................................................. 46

*Newport Aeronautical Sales v. Department of the Air Force*,
  684 F.3d 160 (D.C. Cir. 2012) .................................................... 25, 29

*Open Am. v. Watergate Special Prosecution Force*,
  547 F.2d 605 (D.C. Cir. 1976) ............................ 1, 6, 31, 37, 39, 42, 48

*Pavement Coatings Tech. Council v. U.S. Geological Survey*,
  995 F.3d 1014 (D.C. Cir. 2021) ............................................... 24, 46, 48

*Payne Enters., Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988) .................................................... 22, 28

*Petrucelli v. Department of Justice*,
  453 F. Supp. 3d 126 (D.D.C. 2020) ................................................... 38

*Pinson v. U.S. Dep't of Justice*,
  199 F. Supp. 3d 203 (D.D.C. 2016) ................................................... 38

*Public Citizen v. Department of State*,
  276 F.3d 634 (D.C. Cir. 2002) ........................................................... 41

*Schaerr v. U.S. Dep't of Justice*,
  69 F.4th 924 (D.C. Cir. 2023) ........................................................... 46

*Shapiro v. U.S. Dep't of Justice*,
  40 F.4th 609 (D.C. Cir. 2022) ................................................. 24, 46, 48

*Stewart v. Evans*,
  351 F.3d 1239 (D.C. Cir. 2003) .................................................. 25, 45

*Strang v. U.S. Arms Control & Disarmament Agency*,
  864 F.2d 859 (D.C. Cir. 1989) ........................................................... 47

**Statutes:**

Freedom of Information Act (FOIA):

    5 U.S.C. § 552 ............................................................................................ 3

    5 U.S.C. § 552(a)(1) ................................................................................... 3

    5 U.S.C. § 552(a)(2) ................................................................................... 3

    5 U.S.C. § 552(a)(3)(A) ............................................................................. 4

    5 U.S.C. § 552(a)(4)(B) ........................................................................ 2, 26

    5 U.S.C. § 552(a)(6)(A)(i) ............................................................ 1, 4, 11, 26

    5 U.S.C. § 552(a)(6)(B)(i) ..................................................................... 4, 26

    5 U.S.C. § 552(a)(6)(B)(iii) ........................................................................ 26

    5 U.S.C. § 552(a)(6)(C)(i) ............................................................... 5, 26, 27

    5 U.S.C. § 552(a)(6)(C)(ii) ................................................................... 5, 27

    5 U.S.C. § 552(a)(6)(C)(iii) ......................................................................... 5

    5 U.S.C. § 552(b) ........................................................................................ 4

    5 U.S.C. § 552(b)(7)(F) ............................................................................. 38

Privacy Act

    5 U.S.C. § 552a .......................................................................................... 7

    5 U.S.C. § 552a(d)(1) ................................................................................. 7

    5 U.S.C. § 552a(j) ...................................................................................... 7

28 U.S.C. § 1291 ............................................................................................. 3

28 U.S.C. § 1331 ............................................................................................. 2

**Regulations:**

28 C.F.R. § 16.5(a) .......................................................................................... 6

28 C.F.R. § 16.5(b) ..................................................................................... 6, 32

28 C.F.R. § 16.5(e) .......................................................................................... 6

28 C.F.R. § 16.6(b) .......................................................................................... 6

28 C.F.R. § 16.97 ........................................................................................... 36

28 C.F.R. § 16.97(a) ........................................................................................ 7

28 C.F.R. § 16.97(a)(5) ........................................................... 9

28 C.F.R. § 16.97(b)(3) ........................................................... 7

28 C.F.R. § 513.30 ................................................................... 7

28 C.F.R. § 513.32 ................................................................... 7

28 C.F.R. § 513.40 ........................................................ 8, 35, 43

28 C.F.R. § 513.42 ............................................................. 35, 43

28 C.F.R. § 513.42(a) ............................................................. 8

28 C.F.R. § 513.43 ........................................................ 8, 35, 43

28 C.F.R. § 513.50 ........................................................... 8, 36

28 C.F.R. § 513.60 ........................................................... 8, 43

28 C.F.R. § 513.68 ................................................................. 8

## Other Authorities:

Fed. Bureau of Prisons, *Freedom of Information Act*,
    https://perma.cc/5PLA-NHRV ....................................... 14, 35

Fed. Bureau of Prisons, *Freedom of Information Act*,
    https://perma.cc/9XUZ-A5U3 ............................................ 33

Fed. Bureau of Prisons, *Freedom of Information Act*, FOIA *Records
    Available Online*, https://perma.cc/W865-H5TP ................................. 10

Fed. Bureau of Prisons, No. 5800.17, *Program Statement:
    Inmate Central File, Privacy Folder, and Parole Mini
    Files* (Apr. 3, 2015), https://perma.cc/3H7B-6NG8 ......................... 8, 39

89 Fed. Reg. 49,906 (June 12, 2024) ..................................... 9, 36, 37, 43

## GLOSSARY

| | |
|---|---|
| BOP or Bureau | Bureau of Prisons |
| FOIA | Freedom of Information Act |
| JA | Joint Appendix |
| WLC | Washington Lawyers' Committee for Civil Rights and Urban Affairs |

## INTRODUCTION

The Freedom of Information Act (FOIA) generally requires that an agency faced with a proper request for records must make a "determination" within 20 or 30 working days, depending on the circumstances.  5 U.S.C. § 552(a)(6)(A)(i).  Plaintiff Washington Lawyers' Committee for Civil Rights and Urban Affairs (WLC) contends that the frequent failure of the Bureau of Prisons (BOP or Bureau) to satisfy these timelines "reveals a systemic disregard" for its "legal obligations" and "constitutes an ongoing policy or practice of violating FOIA's procedural requirements."  Dkt. No. 1 (Compl.) ¶ 5 (JA7).

"[I]t is long established in this circuit that an agency's compliance with FOIA depends upon its 'good faith effort and due diligence . . . to comply with all lawful demands [for records] . . . in as short a time as is possible."  *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 781 (D.C. Cir. 2018) (alterations in original) (quoting *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976)).  Given the crushing volume of FOIA requests they face and the finite resources available to process such requests, agencies may satisfy this standard and still find themselves unable to comply in all

circumstances with FOIA's timelines. Indeed, this Court has recognized that it is "a practical impossibility for agencies to process all FOIA requests completely within twenty days." *Citizens for Responsibility & Ethics in Washington v. Federal Election Comm'n* (*CREW I*), 711 F.3d 180, 189 (D.C. Cir. 2013) (brackets omitted). Thus, "delay alone cannot be said to indicate an absence of good faith" in processing FOIA requests. *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978).

After the Bureau offered a detailed affidavit explaining why it was frequently unable to process complex FOIA requests in accordance with statutory timelines and the programmatic steps it was taking to address delays, the district court granted summary judgment to the Bureau on the policy-or-practice claim and denied WLC's request for discovery. WLC appeals both rulings.

## STATEMENT OF JURISDICTION

WLC invoked the district court's jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Compl. ¶ 7 (JA8). The district court granted summary judgment on WLC's policy-or-practice claim on March 10, 2024, and entered judgment on that claim on March 12. Dkt. Nos. 22, 24 (JA152, 184). The district court dismissed all remaining claims

2

on April 18, which made the judgment final.  Minute Order of April 18, 2024 (JA5).  WLC filed a timely notice of appeal on May 8, 2024.  Dkt. No. 31 (JA193).  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Whether the district court properly granted summary judgment on WLC's claim that the Bureau has an unlawful policy or practice of violating FOIA.

2.    Whether the district court abused its discretion by denying WLC's request for discovery.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory and Regulatory Background

**1.**  FOIA requires federal agencies to make certain information available to the public.  *See* 5 U.S.C. § 552.  Agencies must publish some categories of information in the Federal Register, *id.* § 552(a)(1), and make other information available for public inspection in an electronic reading room, *id.* § 552(a)(2); *see Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice* (*CREW II*), 846 F.3d 1235, 1240

3

(D.C. Cir. 2017).  Relevant here is the requirement that agencies make certain records "promptly available" upon receiving a request from a member of the public.  5 U.S.C. § 552(a)(3)(A); *see also id.* § 552(b) (providing several exemptions from this disclosure obligation).

After receiving such a request, an agency is to "determine within 20 [business] days . . . whether to comply."  5 U.S.C. § 552(a)(6)(A)(i); *see also id.* § 552(a)(6)(B)(i) (permitting the agency to extend that time limit by 10 more business days "[i]n unusual circumstances").  The agency must then advise the requester of its determination and of the requester's administrative appeal rights.  *Id.* § 552(a)(6)(A)(i).  To satisfy this timing provision, the agency "need not actually produce the documents" but should "at least indicate . . . the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents."  *CREW I*, 711 F.3d 180, 182-83 (D.C. Cir. 2013). If the agency makes such a determination within 20 working days, the requester must pursue an administrative appeal before seeking judicial review.  *See, e.g.*, *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003).

This Court has "recognize[d] that agencies may not always be able to adhere to" FOIA's 20-day timeline.  *CREW I*, 711 F.3d at 189.  If an

4

agency does not make a determination within 20 working days, "the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Id.* The requester is instead "deemed to have exhausted his administrative remedies" and can file suit in a federal district court without first pursuing an administrative appeal. 5 U.S.C. § 552(a)(6)(C)(i).

After suit is filed, the district court can "retain jurisdiction and allow the agency additional time to complete its review of the records," so long as "the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C)(i).[1] That "safety valve" "allow[s] agencies to deal with broad, time-consuming requests (or justifiable agency backlogs) and to take longer than 20 working days to do so." *CREW I*, 711 F.3d at 189. Ultimately, an agency's "compliance with the

---

[1] The statute does not define "exceptional circumstances," but it provides that "a delay that results from a predictable agency workload of [FOIA] requests" can qualify if "the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii). A requester's refusal to "reasonably modify the scope of a request or arrange an alternative time frame for processing a request . . . shall [also] be considered as a factor in determining whether exceptional circumstances exist." *Id.* § 552(a)(6)(C)(iii).

Act" turns not on its satisfaction with the 20-day provision but on its "good faith effort and due diligence . . . to comply with all lawful demands under [FOIA] in as short a time as is possible." *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976).

**2.**  Department of Justice regulations instruct Department components, including the Bureau, how to carry out this obligation. They provide that "[c]omponents ordinarily will respond to requests according to their order of receipt."  28 C.F.R. § 16.5(a).  But they "must designate a specific track for requests that are granted expedited processing" according to specified standards, and they may also "designate additional processing tracks that distinguish between simple and more complex requests based on the estimated amount of work or time needed to process the request."  *Id.* § 16.5(b); *see also id.* § 16.5(e) (articulating standards for expedited processing).  For any request that will take longer than 10 working days to process, the component "shall acknowledge the request and assign it an individualized tracking number."  *Id.* § 16.6(b).

These Department-wide regulations are supplemented by Bureau regulations that establish additional "procedures for the release of

requested records" in the Bureau's possession.  28 C.F.R. § 513.30.

These regulations provide that "the disclosure of agency information"

shall be made "pursuant to applicable laws," including FOIA and the

Privacy Act, 5 U.S.C. § 552a.  28 C.F.R. § 513.32.  The Privacy Act

generally requires every agency "that maintains a system of records" to

provide access to any individual "to his record or to any information

pertaining to him which is contained in the system."  5 U.S.C.

§ 552a(d)(1).  But the Privacy Act further permits agencies to adopt

regulations exempting a system of records from that access provision,

with the result that individuals cannot use that statute to access

records about themselves in such systems.  *Id.* § 552a(j).  Many Bureau

records—including, as relevant here, inmate records—are exempt from

the access provisions of the Privacy Act "to prevent disclosure of

information to federal inmates that would jeopardize legitimate

correctional interests of security, custody, or rehabilitation, and to

permit receipt of relevant information from other federal agencies, state

and local law enforcement agencies, and federal and state probation and

judicial offices."  28 C.F.R. § 16.97(a), (b)(3).  Thus, the regulations

provide that requests for Bureau records "ordinarily shall be processed

7

pursuant to the Freedom of Information Act." *Id.* § 513.60; *id.* § 513.50 (providing that "inmate requests for records under the Privacy Act will be processed in accordance with the FOIA"). In doing so, "the Bureau strives to comply with the time limits set forth in [FOIA]." *Id.* § 513.68.

The Bureau has created alternate procedures for inmates to obtain certain categories of information without submitting a formal FOIA request. For example, the Bureau "encourage[s]" inmates to use "simple local access procedures" to review certain Bureau Program Statements, 28 C.F.R. § 513.43, and "disclosable records" maintained in an "Inmate Central File," *id.* § 513.40; *see also* Fed. Bureau of Prisons, No. 5800.17, *Program Statement: Inmate Central File, Privacy Folder, and Parole Mini Files* 10-12, 16-19 (Apr. 3, 2015) (BOP Program Statement 5800.17), https://perma.cc/3H7B-6NG8 (discussing inmate access to central files and identifying the contents of the disclosable portion). The Bureau also permits inmates to review certain records from their medical files, such as laboratory results, by "submitting a request to a staff member designated by the Warden." 28 C.F.R. § 513.42(a).

During the COVID-19 pandemic, the Bureau created an informal process through which attorneys could obtain expedited access to their clients' medical records for the past two years "in support of motions for compassionate release and requests for home confinement."  Dkt. No. 14-3 (Baime Decl.)  ¶ 18 (JA67).  This process was recently formalized through a modified systems of records notice issued under the Privacy Act.  89 Fed. Reg. 49,906 (June 12, 2024).  As noted, the Bureau's system of records containing inmate medical files is normally exempt from the access procedures of the Privacy Act.  *See* 28 C.F.R. § 16.97(a)(5).  In this notice, the Bureau explained that it was initiating a new process for requesting inmate medical records where doing so would not interfere with the purposes of the system or law enforcement or intelligence interests.  The notice specifically establishes procedures for attorneys to follow to request "medical records of their clients in civil or criminal matters."  89 Fed. Reg. at 49,909.  Unlike the prior system adopted during the pandemic, this new process applies to all requests from attorneys of current or former inmates for their clients' medical records and is not limited to requests for specified purposes or the last two years of records.  *Id.*; *see also* Fed. Bureau of Prisons*, Freedom of*

9

*Information Act*, FOIA *Records Available Online*, https://perma.cc/ W865-H5TP (describing the process and noting that requests are usually processed within 3 working days, under the heading "Guidance on Attorneys Requesting Their Client's Medical Records" under the "Overview Tab").

**B.     Factual Background**

**1.**  WLC is a non-profit legal services organization that represents incarcerated individuals, including individuals incarcerated in Bureau facilities.  Dkt. No. 17-2 (Hart Decl.) ¶ 5 (JA133).  As part of this work, WLC "requires access to records and other information" held by the Bureau, including "medical or institutional record[s]" of individual prisoners and "system-wide data related to BOP and its institutions." *Id.* ¶ 6 (JA133-34).  WLC asserts that the Bureau "requires attorneys at WLC to submit a FOIA request" "[i]n order to obtain information or records within its custody or control." *Id.* ¶ 7 (JA134).

**2.**  WLC filed suit on May 10, 2023, alleging that the Bureau "routinely" fails to "adequately respond to the FOIA requests" and that its failure to "make a determination regarding the availability of the requested records in accordance with FOIA's statutorily-imposed

10

timelines reveals a systemic disregard for the BOP's legal obligations, and constitutes an ongoing policy or practice of violating FOIA's procedural requirements."  Compl. ¶¶ 4-5 (JA7).

Attached to the complaint is a chart identifying 43 FOIA requests that WLC submitted to the Bureau between December 2019 and March 2023.  Compl. Ex. A (JA19-21).  Most of the requests "seek materials within an individual client's BOP file"; several others "relate to the BOP's compliance with the civil and constitutional rights of incarcerated individuals on a system-wide basis."  Compl. ¶¶ 17-18 (JA10); *see* Ex. A (JA19-21).  Nearly all are denominated "complex" by the Bureau.  Compl. Ex. A (JA19-21).  The chart indicates that WLC had not yet received records in response to 41 of the requests.  *Id.*  The complaint alleges that "for each of the requests" identified in the chart, "and in violation of 5 U.S.C. § 552(a)(6)(A)(i)," BOP has failed to "determine whether to comply with each request"; "notify WLC of any such determination or the reasons therefor within twenty (20) business days of receipt"; or "advise WLC of the right to appeal any adverse determination."  Compl. ¶ 31 (JA14).

11

The complaint includes two counts.  Count I claims that BOP "is violating FOIA by failing to conduct a search reasonably calculated to uncover all records responsive to each of WLC's requests and is unlawfully withholding records responsive to each request."  Compl. ¶ 36 (JA15).  Count II claims that BOP "has a policy and practice of violating FOIA's procedural requirements" by failing to conduct a search and provide a substantive response "within the time period required by FOIA or at least within a reasonable period of time."  Compl. ¶ 40 (JA15).  Among other relief, WLC requests an injunction prohibiting BOP from "failing or refusing to produce all non-exempt records responsive to WLC's current and future FOIA requests or otherwise demonstrate that requested records are exempt from production within the time period required by FOIA."  Compl. 11 (JA16).

**3.**  The Bureau moved to dismiss 16 individual requests from Count I and Count II in its entirety.  The Bureau also moved in the alternative for summary judgment on Count II.  In support of a motion for summary judgment, BOP offered a declaration from Supervisory Attorney Eugene Baime to explain the Bureau's processing procedures.

Upon receipt, a request will be assigned to the complex, simple, or expedited track based on "the location of the documents requested, the number of pages anticipated to be involved in processing the request, and other factors potentially complicating BOP's ability to respond." Baime Decl. ¶ 7 (JA63).  A Bureau employee will send the requester an acknowledgement letter providing a tracking number for the request and other relevant administrative information, including which track the request was placed on.  *Id.*

Due to the large number of requests it receives and "the limited resources available to process such requests, BOP handles each request on a first in, first out basis in relation to other requests in the same track."  Baime Decl. ¶ 7 (JA63).  After a search has been conducted, a FOIA professional will review the results to determine whether any records are responsive, whether they contain information exempt from disclosure, and whether any other agencies must be consulted before release.  *Id.* ¶ 8 (JA63-64).  A second-level review is then performed by a more experienced specialist.  *Id.*  Once that review has concluded, the Bureau issues a determination letter and releases all non-exempt and reasonably segregable information.  *Id.*  The determination letter

13

informs the requester of her rights to contact the Bureau's FOIA Public Liaison, seek mediation from the Office of Governmental Information Services, and file an administrative appeal with the Department's Office of Information Policy.  *Id.*

Mr. Baime explained that "BOP has no policy or practice, either formal or informal, of intentionally violating FOIA for any reason." Baime Decl. ¶ 9 (JA64).  On the contrary, the Bureau "works tirelessly to promote governmental transparency and respond to FOIA requests providing as much releasable information as possible as quickly as it possibly can given BOP's resource constraints and its backlog of outstanding FOIA requests."  *Id.*  For example, the Bureau "proactively posts numerous records on its public webpage," including frequently requested records in a wide variety of categories.  *Id.* ¶ 12 (JA65); *see also* Fed. Bureau of Prisons, *Freedom of Information Act*, https://perma.cc/5PLA-NHRV (providing links to records about topics such as COVID, Jeffrey Epstein, Inmate Info, Menus, and Operations under the "Records Available Online" heading under the "Records" tab).

Between fiscal years 2019 and 2022, the Bureau processed over 5,800 requests a year.  Baime Decl. ¶ 14 (JA66).  However, the Bureau

14

receives even more than that every year and therefore faces a
considerable backlog of FOIA requests—over 6,000 requests, as of
August 8, 2023. *Id.* ¶ 25 (JA70).

Mr. Baime identified several reasons for this backlog, beyond the
sheer number of requests received. First, "[t]he complexity of requests
received by the BOP has continued to increase every year" since 2016.
Baime Decl. ¶ 22 (JA69). Because the Bureau has been prevented by
time constraints and systems limitations from charging fees, "many
requesters seek numerous records in one request, sometimes in excess
of 20,000 pages." *Id.*[2] Second, the Bureau lost several staff members
between fiscal year 2015 and fiscal year 2023, which made it difficult to
maintain or improve processing times and reduce the existing backlog.
*Id.* ¶ 25 (JA70).

Third, this smaller staff is often faced with competing demands on
their time. For example, during the pandemic, "FOIA staff also handled
certain COVID-related tasks, such as augmenting staff at correctional

---

[2] While not invoked by Mr. Baime, a related problem faced by
agencies across the government is that some requesters submit an
unusually high volume of requests.

facilities" and helping former inmates receive their vaccine cards.

Baime Decl. ¶¶ 16-17 (JA67).  FOIA staff also spend considerable time

responding to attorneys' requests for their clients' medical records,

which, as discussed above, are "processed outside of FOIA and not

included in BOP's FOIA statistics." *Id.* ¶ 18 (JA67).  After the

pandemic began, the Bureau created a new process where attorneys

who submit such requests in support of motions for compassionate

release and requests for home confinement usually receive the inmate's

past two years of medical records within 24 hours.  *Id.*  During the first

year of the pandemic, "FOIA staff spent in excess of 100 hours a week

responding to these requests"—the equivalent of more than 2.5 full-time

employees—and even in 2023, this takes approximately 20 hours a

week.  *Id.*[3]  And attorneys on the FOIA staff must assist with responses

to Governmental Accounting Office audits, many of which require

"review of voluminous amounts of records" under tight deadlines

("within two business days").  *Id.* ¶ 19 (JA68).  While performing these

---

[3] As noted above, the Bureau has since adopted procedures to
provide for expanded access to inmate medical records, with no
limitation as to purpose.

16

duties, FOIA staff are not able to process FOIA requests. *Id.* ¶ 16 (JA67).

Despite these challenges, the Bureau has taken several steps to improve its FOIA operations. Most notably, on January 30, 2023, the Bureau implemented a plan called "Centralization Light," which centralized supervision of the Bureau's entire FOIA program under a Supervisory Attorney and Supervisory Government Information Specialist assigned to the Bureau's Central Office in Washington, D.C. Baime Decl. ¶ 21 (JA68). Since that time, "BOP FOIA staff have processed 36.5% more requests on a weekly basis" and have slowed the rate of backlog growth by 34.4%. *Id.* (JA69).

The Bureau maintains a robust FOIA training program under which all employees involved in handling FOIA requests must annually complete training modules created by the Office of Information Policy in 2022. Baime Decl. ¶ 27 (JA70-71). FOIA staff receive guidance and updates on FOIA issues in weekly calls and monthly emails "to improve BOP's effectiveness and consistency processing FOIA requests." *Id.* ¶ 28 (JA71). And staff not involved in the processing of FOIA requests are regularly informed of their obligations under FOIA. *Id.* ¶ 27 (JA71).

17

The Bureau also evaluates FOIA metrics to assess its performance and "determine how to best manage the FOIA workload."  Baime Decl. ¶ 24 (JA69-70).  The Centralization Light plan described above was created as a result of this monitoring.  The ongoing evaluations also allow the Bureau to measure its performance relative to the rest of the Department of Justice.  In fiscal year 2022, for example, each FOIA professional "individually processed an average of 288.6 FOIA requests," which is 85% higher than the average across the Department.  *Id.* ¶ 23 (JA69).  Further, the Bureau processed 23.3% of all complex FOIA requests submitted to the Department.  This meant that each FOIA professional at the Bureau "individually processed an average of 204.9 complex requests per year," a full 570% higher than the Department average.  *Id.*  Yet even with that staggering load of complex requests, the Bureau still managed to keep its average processing time for requests on the simple track to 6.4 days (compared to a Department-wide average of 134).  *Id.*

**4.**  The district court described this case as "confusing, starting with plaintiff's Complaint."  Dkt. No. 23 (Op.) 2 (JA155).  The court observed that WLC had "attempted to shoehorn dozens of unrelated

18

FOIA requests into a single Complaint, and in so doing ha[d] made this case overcomplicated, with a moving target of issues to address." *Id.* As to Count I, the court granted as conceded the government's motion to dismiss 16 individual requests from the action. *Id.* The court further ordered that all the remaining individual requests except for the oldest should be severed and dismissed unless they were refiled in separate actions. Op. 29 (JA182). That left a single FOIA request subject to Count I.

The district court denied the Bureau's motion to dismiss Count II. The court held "[t]he allegations in plaintiff's policy and practice claim" were "sufficient to state a reasonably plausible claim" and "survive [a] motion to dismiss under Rule 12(b)(6)" and that "no administrative exhaustion is required for judicial review" of such a claim. Op. 19-20, 20 n.6 (JA172-73, 173 n.6).

The district court went on to hold, however, that the Bureau was entitled to summary judgment on the policy-or-practice claim because its declarations establish that "there is no genuine dispute as to the existence of any improper policy or practice." Op. 21 (JA174). The Baime declaration established that the Bureau "receives an

19

extraordinary number of FOIA requests each year"; that it "works tirelessly" to process them as quickly as it can; that it "improved its training process" and "recently implemented a new structural change to the processing of FOIA requests"; and that it had significantly increased productivity and "made significant progress in addressing its FOIA backlog." Op. 22 (JA175). "Each of these facts," the court concluded, "serves to show that BOP does not have a policy or practice of 'repeated, unexplained, and prolonged delay in making information available' in response to FOIA requests until requester litigation is initiated." *Id.* (quoting *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d at 770, 779 (D.C. Cir. 2018)).

In FOIA cases, "an agency's declarations may provide the basis for grant of summary judgment if 'they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" Op. 21 (JA174). The court ruled that the Bureau had "provided detailed explanations of its process for responding to FOIA requests and the reason for delays in responding to requests" and that WLC had offered no evidence that would "support a

20

finding of bad faith" or otherwise undermine "BOP's undisputed declarations." Op. 22-23 (JA175-76).

The court rejected WLC's request for discovery under Rule 56(d). The court explained that WLC "fails to grapple" with the specific standard for discovery in FOIA cases, which requires evidence "that the agency acted in bad faith" or that otherwise undermines the agency's declaration. Op. 24 (JA177). WLC had "suggested nothing" that would do either. *Id.* Rather, its "request for discovery under Rule 56(d) boils down to its belief that more may be learned about internal BOP FOIA processing and training." Op. 25 (JA178). The court agreed that this "may be so" but it "is not the measure of whether additional discovery is necessary to resolve FOIA litigation." *Id.*

**5.** Following the district court's ruling, the parties stipulated to the dismissal of the sole individual request remaining in Count I because "no known issues remain" outstanding as to that request. Dkt. Nos. 25, 26 (JA186, 188-89). WLC then informed the district court that it did not intend to refile separate actions as to any of the individual FOIA requests severed from Count I. Dkt. No. 30 (JA191). The district court therefore entered a minute order dismissing all remaining claims

in Count I and ordered the clerk to close the case.  Minute Order of

April 18, 2024 (JA5).

## SUMMARY OF ARGUMENT

**I.**  A plaintiff must make an extraordinary showing to succeed on

a claim that agency delay constitutes a policy or practice of violating

FOIA.  The statute imposes a penalty for agencies that do not act within

the statutory time frame—the agency cannot rely on administrative

exhaustion to prevent the requester from suing.  But the statute's terms

do not contemplate injunctive relief directed to the agency's processing

of future requests.

This Court has recognized that in rare cases, prospective relief

may be available to a plaintiff that establishes an agency policy or

practice that impairs a "party's lawful access to information in the

future."  *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C.

Cir. 1988).  It has further established that a plaintiff may state a policy-

or-practice claim based on agency's "unexplained" delay in processing

FOIA requests.  *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*,

895 F.3d 770, 780 (D.C. Cir. 2018).  But it has also made clear that,

after an agency has been given an opportunity "to explain its delay," the

22

ultimate question of agency "compliance with FOIA depends upon its good faith effort and due diligence" to process requests for records "in as short a time as is possible." *Id.* at 781, 782 (quotation marks omitted).

The uncontradicted record evidence in this case explains that the Bureau is frequently unable to meet statutory deadlines due to excessive workloads and limited resources, and it likewise establishes the Bureau's good faith efforts and due diligence to improve its processing FOIA requests. As the district court observed, WLC offered no evidence to controvert the Bureau's showing or demonstrate agency bad faith. Nor do the facts of this case resemble any in which this Court has indicated that a policy-or-practice claim might succeed. The district court's grant of summary judgment was therefore proper.

WLC identifies no error in this ruling. It identifies no case in which this Court has held that a reasonably explained delay alone can establish a policy or practice of violating FOIA. On the contrary, this Court has recognized that it is "practical[ly] impossib[le] for agencies to process all FOIA requests" within the statutory timelines, *CREW I*, 711 F.3d 180, 189 (D.C. Cir. 2013) (brackets omitted), and that "delay alone cannot be said to indicate an absence of good faith." *Goland v. CIA*, 607

23

F.2d 339, 355 (D.C. Cir. 1978). WLC asserts that the Bureau's delays are caused at least in part by a policy of channeling too many document requests through FOIA. But this is not a claim that the agency violates FOIA, and WLC identifies nothing in the statute's terms that limits its use as a general mechanism to access agency records. Its other arguments fare no better. The grant of summary judgment should be affirmed.

**II.**  The district court did not abuse its discretion in denying WLC's request for discovery. "Generally speaking, discovery is rarely appropriate in FOIA cases, and the preferred approach, if possible, is to resolve the lawsuit without discovery and by summary judgment." *Pavement Coatings Tech. Council v. U.S. Geological Survey*, 995 F.3d 1014, 1024 (D.C. Cir. 2021) (citation omitted). This Court has repeatedly emphasized that discovery is appropriate only where the plaintiff can make an evidentiary showing that the agency has acted in bad faith. *See, e.g.*, *Shapiro v. U.S. Dep't of Justice*, 40 F.4th 609, 615 (D.C. Cir. 2022). A mere desire to learn more about an agency's practices or to subject an agency declaration to adversary testing is insufficient. Because WLC failed to make the required showing, the

24

district court acted well within its discretion in denying the request for discovery.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed de novo. *Newport Aeronautical Sales v. Department of the Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012). A denial of discovery is reviewed for abuse of discretion. *Stewart v. Evans*, 351 F.3d 1239, 1245 (D.C. Cir. 2003).

## ARGUMENT

## I. The District Court Properly Rejected WLC's Policy-or-Practice Claim

WLC contends that the Bureau's failure to "make a determination regarding the availability of the requested records in accordance with FOIA's statutorily-imposed timelines . . . constitutes an ongoing policy or practice of violating FOIA's procedural requirements." Compl. ¶ 5 (JA7). The district court correctly granted summary judgment on this policy-or-practice claim to the Bureau.

### A. A Policy-or-Practice Claim Based on Delay Requires an Extraordinary Showing of Lack of Good Faith and Diligence

**1.** After receiving a FOIA request, an agency should ordinarily "determine within 20 [working] days . . . whether to comply," 5 U.S.C.

§ 552(a)(6)(A)(i), but has up to 30 working days where that "determination" requires, among other things, searching or examining "voluminous" records or "consultation" with another agency, *id.* § 552(a)(6)(B)(i), (iii).  If the agency makes a determination within that time frame, the requester must pursue an administrative appeal before seeking judicial review.  *See id.* § 552(a)(6)(C)(i).

When an agency does not act within that timeframe, the statute provides the ordinary remedy: the requester "shall be deemed to have exhausted his administrative remedies with respect to such request." 5 U.S.C. § 552(a)(6)(C)(i).  Then, "[o]n complaint," a district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  *Id.* § 552(a)(4)(B).  The "penalty" for delay, in other words, is that "the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."  *CREW I*, 711 F.3d 180, 189 (D.C. Cir. 2013).

"Once in court, however, the agency may further extend its response time if it demonstrates 'exceptional circumstances' to the court."  *CREW I*, 711 F.3d at 185.  "If the Government can show

26

exceptional circumstances exist and that the agency is exercising due
diligence in responding to the request, the court may retain jurisdiction
and allow the agency additional time to complete its review of the
records." 5 U.S.C. § 552(a)(6)(C)(i). Such "exceptional circumstances"
do not, as a general matter, "include a delay that results from a
predictable agency workload of [FOIA] requests," but such delays may
establish exceptional circumstances if "the agency demonstrates
reasonable progress in reducing its backlog of pending requests." *Id.*
§ 552(a)(6)(C)(ii). As then-Judge Kavanaugh explained, this
exceptional-circumstances provision is a "safety valve" that "allow[s]
agencies to deal with broad, time-consuming requests (or justifiable
agency backlogs)." *CREW I*, 711 F.3d at 189. It "accommodates" the
"reality" that "it would be a practical impossibility for agencies to
process all FOIA requests completely within twenty days." *Id.*
(alteration and quotation marks omitted).

　　**2.** FOIA's terms do not contemplate injunctive relief directed to
an agency's processing of future requests. But this Court has
recognized that, in "rare instance[s] of agency delinquency," *CREW II*,
846 F.3d 1235, 1246 (D.C. Cir. 2017), prospective relief under FOIA

may nevertheless be available against "an agency policy or practice" that "impair[s] [a] party's lawful access to information in the future." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (emphasis omitted).

This Court's case law establishes that a plaintiff must clear a very high bar to succeed on such a policy-or-practice claim. Indeed, the Court has only once held that a plaintiff had successfully done so. In *Payne*, Air Force officers repeatedly denied a plaintiff's FOIA requests for almost two years, even though the Secretary of the Air Force had admonished that "no FOIA exemption applied" and their "position was wholly unjustified." 837 F.2d at 489, 494. The Court held that "[t]he Secretary's inability to deal with [the] officers' noncompliance with the FOIA, and the Air Force's persistent refusal to end a practice for which it offers no justification," established an unlawful policy or practice and "entitle[d] Payne to declaratory relief." *Id.* at 494; *see also id.* at 488, 491 n.8 (finding that the Air Force has committed multiple "clear violations of the FOIA" that arose from a "concerted policy" to withhold information not protected by an exemption).

In two other cases, the Court acknowledged the theoretical availability of prospective relief on a policy-or-practice claim but held that the claims did not succeed. *Newport Aeronautical Sales v. Department of the Air Force*, 684 F.3d 160 (D.C. Cir. 2012), like *Payne*, involved a claim that the Air Force was unlawfully withholding documents based on an erroneous invocation of a FOIA exemption. The Court held that the disclosure of requested documents did not moot the case because the plaintiff challenged an ongoing policy with respect to the application of FOIA exemption 3. *Id.* at 164. But the Court concluded that the claim failed on the merits because the challenged practice "does not violate FOIA." *Id.* at 168. In *Center for the Study of Services v. U.S. Department of Health & Human Services*, 874 F.3d 287, 290 (D.C. Cir. 2017), the Court reviewed a permanent injunction that required an agency to produce records each year. The Court held that such prospective relief was improper because it was not supported by a finding that "the agency was adhering to a policy or practice that it acknowledged as impermissible," that the agency had invoked an exemption "solely for purposes of delay, effectively flaunting the statutory scheme," or that "the agency was likely, in the face of [the

29

district court's] ruling that Exemption 4 was inapplicable, to continue on that basis to impair [the plaintiff's] lawful access to the information in the future." *Id.* at 292.

The Court's most recent engagement with a policy-or-practice claim came in *Judicial Watch, Inc. v. U.S. Department of Homeland Security*, 895 F.3d 770 (D.C. Cir. 2018). In that case, the complaint alleged that the plaintiff had filed 19 FOIA requests for "the same type of records and that six nearly identical lawsuits have not produced any change in the Secret Service's response to its proper requests until after it has filed a lawsuit." *Id.* at 780. A divided panel of this Court held that "a plaintiff states a plausible policy or practice claim" where it alleges "prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements." *Id.*

Critically, because the case was at the pleading stage, the Secret Service had not offered any justification or explanation for its delays. *See Judicial Watch*, 895 F.3d at 780. The Court determined that the agency's "as yet unexplained delays in making requested non-exempt records available" permitted a "reasonable inference" to be drawn from

30

the alleged facts "that the Secret Service ha[d] adopted a practice of delay" by "repeatedly standing mute over a prolonged period of time and using Judicial Watch's filing of a lawsuit as an organizing tool for setting its response priorities." *Id.* at 780-81.  The Court explained that, on remand to the district court, the Secret Service would "have the opportunity . . . to explain its delays," and that its ultimate success would depend on whether it could demonstrate "'good faith effort and due diligence'"—long recognized as "the touchstones underlying FOIA's statutory scheme." *Id.* at 783-84 (citing *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976)).

## B.    The District Court Correctly Granted Summary Judgment to the Bureau

The "vast majority of FOIA cases can be resolved on summary judgment." *Evans v. Federal Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020).  Summary judgment may be granted on the basis of an agency's declaration if it contains "reasonable specificity of detail rather than merely conclusory statements" and it is "not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Id.*

The uncontradicted record evidence explains the Bureau's delays and establishes the agency's good faith effort and due diligence in processing FOIA requests. As the agency's declarant explained, the Bureau "has no policy or practice, either formal or informal, of intentionally violating FOIA for any reason." Baime Decl. ¶ 9 (JA64). On the contrary, the Bureau works to respond to FOIA requests by "providing as much releasable information as possible as quickly as it possibly can given BOP's resource constraints and its backlog of outstanding FOIA requests." *Id.*

The agency's declarant explained that the Bureau processes a large number of requests annually—nearly 5,900 a year from fiscal years 2019 to 2022. Baime Decl. ¶ 12 (JA65). The processing burden results in part from the number of requests received but also from the high number of requests designated as complex based on the estimated amount of work or time needed to process the request. *See* 28 C.F.R. § 16.5(b). The Bureau's "average processing time for requests on the simple track was 6.4 days, well under the 20 day statutory limit." Baime Decl. ¶ 23 (JA69). But while these FOIA requests are relatively narrow and targeted, "many requesters seek numerous records in one

32

request, sometimes in excess of 20,000 pages." *Id.* ¶ 22 (JA69).

Collectively, such requests require Bureau FOIA staff to review millions

of pages of potentially responsive documents—over 4,000,000 pages in

fiscal year 2022.  Fed. Bureau of Prisons, *Freedom of Information Act*,

https://perma.cc/9XUZ-A5U3 ("How Are Requests Processed" tab under

the "FAQs" tab).  The relative number of complex requests far exceeds

that of most Department of Justice components.  Each Bureau FOIA

professional processes 85% more FOIA requests and 570% more

complex FOIA requests than similarly situated staff across the

Department.  Baime Decl. ¶ 23 (JA69).

Despite these efforts, the Bureau also faces a considerable

backlog—over 6,000 requests, as of August 8, 2023.  Baime Decl. ¶ 25

(JA70).  The reasons for this backlog include the high number of

complex requests, *id.* ¶ 22 (JA69) (explaining that the complexity of

requests has increased every year since 2016), a decline in staffing

levels, *id.* ¶ 25 (JA70), and competing demands on the time of FOIA

staff, especially during the pandemic, *id.* ¶ 16-18 (JA67) (describing the

non-FOIA tasks that staff must perform, including responding to

attorney requests for client medical records).  And because the Bureau

33

generally processes requests on a "first in, first out" basis, *id.* ¶ 7 (JA63), the existence of a backlog may extend the time required for processing new requests.

But as Mr. Baime explains in his declaration, the Bureau has taken a number of steps to improve its FOIA operations. It maintains a robust training program that incorporates new training modules created by the Department's Office of Information Policy (charged with overseeing FOIA compliance and developing government-wide policy guidance on FOIA administration), and it provides guidance and updates on weekly calls and monthly emails to all FOIA staff. Baime Decl. ¶ 27 (JA70-71). The Bureau evaluates its performance on an ongoing basis to search for areas of improvement. This self-monitoring process led to the "Centralization Light" plan, which centralized supervision of the Bureau's FOIA program under officials assigned to the Bureau's Central Office in Washington, D.C., instead of having each Regional Counsel oversee separate FOIA offices in six different geographic regions. *Id.* ¶ 21 (JA68). Improvements are already evident. Since this plan was implemented, FOIA staff "have processed

36.5% more requests on a weekly basis" and have slowed the growth rate of the backlog by a comparable amount. *Id.* (JA68-69).[4]

The Bureau has also taken several steps to ease the strain on the FOIA processing system. For example, the Bureau proactively posts frequently requested records on a variety of subjects on its public webpage to reduce the number of duplicative requests. Baime Decl. ¶ 9 (JA64); *see* Fed. Bureau of Prisons, *Freedom of Information Act*, https://perma.cc/5PLA-NHRV ("Records Available Online" heading under the "Records" tab). It provides "simple local access procedures" to allow requesters to obtain certain information directly from their own institutions without having to make a FOIA request to the agency. 28 C.F.R. § 513.43 (providing access to certain Bureau Program Statements); *id.* § 513.40 (disclosable records contained in the prisoner's inmate central file); *id.* § 513.42 (records within inmate medical files). And during the COVID-19 pandemic, the Bureau created a new informal process, also outside of FOIA, for attorneys to get rapid access

---

[4] Subsequent to the filing of the Baime declaration, the Bureau has also made significant progress in addressing its staffing shortage. The Bureau added new hires to its FOIA staff in the past six months and it recently solicited applications for additional vacancies. *See* https://perma.cc/RX59-J4TP; https://perma.cc/ES47-6CNS.

to two years of client medical records to use in support of motions for compassionate release and requests for home confinement.  Baime Decl. ¶ 16-17 (JA67).  But for these processes, requests for such information would need to be channeled through FOIA and would further contribute to the backlog.

The Bureau's efforts to improve remain ongoing.  Indeed, since the Baime declaration was submitted, the Bureau has formalized and expanded the program to provide rapid access to medical records.  On June 12, 2024, the Bureau issued a notice of a modified system of records pursuant to the Privacy Act relating to inmate health records. 89 Fed. Reg. 49,906.  As a general matter, such records are exempted from the Privacy Act's access procedures.  28 C.F.R. § 16.97; *id.* § 513.50 (providing that "inmate requests for records under the Privacy Act will be processed in accordance with the FOIA").  The notice explained that the Bureau could waive this exemption that the Bureau had created access procedures, pursuant to the Privacy Act, by which attorneys could request medical records for their clients without going through the FOIA process.  The new procedures are broader than the informal access system created during the pandemic, which was limited to two

36

years of records needed to support motions for compassionate release and home confinement (consistent with the program's origins). *See* 89 Fed. Reg. at 49,909. Thus, attorneys—including those at WLC—are able to obtain client medical records for any purpose related to their representation and for the entire time frame requested, with no temporal limitation.

These facts establish the Bureau's "good faith effort and due diligence . . . to comply with all lawful demands [for records] . . . in as short a time as is possible." *Judicial Watch*, 895 F.3d at 781 (alterations in original) (quoting *Open Am.*, 547 F.2d at 616). As the district court observed, WLC offered no evidence to controvert the Bureau's declaration, nor did it offer any evidence of bad faith. Op. 21-23 (JA174-76). There is thus no "genuine dispute of material fact as to whether BOP has a policy or practice of intentionally failing to comply with the agency's FOIA obligations." Op. 23 (JA176).

Nor do the facts of this case resemble those of any case in which this Court has indicated that a policy-or-practice claim might succeed. There is no allegation here, as there was in *Payne* and *Newport*, that

37

the Bureau has repeatedly withheld documents based on an erroneous assertion of a FOIA exemption.

The concerns that animated the decision in *Judicial Watch* are likewise absent here. This case does not involve multiple requests for "nearly identical' records," *Judicial Watch*, 895 F.3d at 779. To the contrary, WLC has sought a wide array of different documents, including records regarding systemic issues across the entire agency and records contained within the central files[5] for multiple persons in Bureau custody. Inmate central files "can easily run to thousands of pages if an inmate serves a long sentence," *Petrucelli v. Department of Justice*, 453 F. Supp. 3d 126, 136 (D.D.C. 2020), and often require painstaking review because of the sensitive information contained within them, *see, e.g.*, *Pinson v. U.S. Dep't of Justice*, 199 F. Supp. 3d 203, 217 (D.D.C. 2016) (finding that the "release of [particular] inmates' Central Files 'could reasonably be expected to endanger the life or physical safety of any individual'" (quoting 5 U.S.C. § 552(b)(7)(F)). *See*

---

[5] The central file is the Bureau's "primary system . . . for the maintenance of records pertaining to the care, classification/ designation, subsistence, protections, discipline and programs of federal inmates." *Anderson v. Federal Bureau of Prisons*, 806 F. Supp. 2d 121, 124 (D.D.C. 2011) (alteration in original).

*generally* BOP Program Statement 5800.17, at 16-20 (describing the contents of the central file). And given the undisputed evidence that the Bureau generally processes requests on each track on a first in, first out basis, there can be no concern that the Bureau uses the "filing of a lawsuit as an organizing tool for setting its response priorities" and then "mooting the litigation" to "escap[e] judicial review." *Judicial Watch*, 895 F.3d at 779, 781; *see also Open Am.*, 547 F.2d at 616 (approving the use of a "first-in, first-out" system, with exceptions for "exceptional need or urgency").[6]

Nor can there be any contention that the Bureau's prior delays are "[u]nexplained" or the result of "a lack of due diligence." *Judicial Watch*, 895 F.3d at 783. WLC's allegations may have been sufficient to state a policy-or-practice claim that could survive dismissal under Rule 12(b)(6). But as the district court correctly held, the agency proceeded to provide a thorough explanation for the time frames involved in

---

[6] The statement in the Baime Declaration that "the equivalent of 2.3 staff members' work" is devoted to "FOIA litigation and not normal FOIA processing," Baime Decl. ¶ 20 (JA68), underscores the agency's diligent efforts to comply with court orders; it does not suggest that the Bureau simply ignores requests until a lawsuit is filed, as was the concern in *Judicial Watch*.

39

responding to FOIA requests and established its good faith and due diligence, making summary judgment in its favor appropriate.

## C.   WLC Fails to Identify Any Error in the District Court's Ruling.

WLC's primary theory, both before the district court and this Court, is that the Bureau has a policy or practice of violating FOIA because it frequently is unable to respond to requests "within the 20-day statutory period." Br. 20-21. As an initial matter, WLC fails to acknowledge the undisputed evidence that the Bureau's average processing time for simple requests in fiscal year 2022 (the last full year before WLC filed suit) was 6.4 days, well under the 20-day deadline that WLC emphasizes. Baime Decl. ¶ 23 (JA69).

More fundamentally, WLC's theory rests on a mistaken legal premise. It identifies no case law holding that delay alone can justify judgment in a requester's favor on a policy-or-practice claim, and the cases it does cite fail to bridge the gap. As noted above, *Judicial Watch* held that allegations of "unexplained dela[y]" consistent with the possibility of an improper policy or practice can be enough to state a claim, but the Court recognized that agency explanation demonstrating good faith and due diligence would be sufficient to defeat such a claim.

40

895 F.3d at 780-81, 784. *McGehee v. CIA*, 697 F.2d 1095 (D.C. Cir.

1983), did not involve a policy-or-practice claim, but a suit to compel

disclosure of specific documents. *Id.* at 1098-99. The Court there

observed that, if an agency "refuse[d] to act" on the request "on the

ground that the documents originated elsewhere," that might constitute

a "withholding" such that the district court could properly compel

disclosure. *Id.* at 1110. And *Public Citizen v. Department of State*, 276

F.3d 634 (D.C. Cir. 2002), involved a challenge to the scope of an

agency's searches, not the time it took to process requests. The Court

held that the agency's use of a certain cut-off date was unreasonable

because it would require the submission of "multiple FOIA requests to

obtain documents that the Department would have released in response

to a single request had it used a later cut-off date." *Id.* at 643.

As then-Judge Kavanaugh observed, it is simply a "reality" that it

is "practical[ly] impossib[le] for agencies to process all FOIA requests

completely within twenty days." *CREW I*, 711 F.3d at 189 (brackets

omitted). When, in any given case, the agency "does not adhere to

FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on

the administrative exhaustion requirement to keep cases from getting

41

into court." *Id.* But the larger question of the agency's "compliance with the Act," depends on the agency's "good faith effort and due diligence," not on its ability to meet the statutory deadlines. *Open Am.*, 547 F.2d at 616. And this Court has long recognized that "delay alone cannot be said to indicate an absence of good faith" in processing FOIA requests. *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978).

WLC contends (Br. 22) that the Bureau's delays "are caused at least in part by BOP's policy of channeling virtually all document requests through its FOIA process." This is not a claim that the Bureau violates FOIA.[7] WLC identifies nothing in FOIA's terms that limits its use as a general mechanism of access to agency documents. Indeed, that is the whole point of the statute. *See, e.g.*, *Kissinger v. Reports Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) ("The FOIA represents a carefully balanced scheme of public rights and agency obligations designed to foster greater access to agency records than existed prior to its enactment."). WLC has not challenged the Bureau

---

[7] For this reason, it was not error for the district court to decline to address WLC's brief discussion of the issue, *see* Dkt. No. 17, at 17-18 (JA111-12), when granting the Bureau's motion for summary judgment. *Contra* Br. 24.

regulation providing that "[r]equests for any Bureau record . . . ordinarily shall be processed pursuant to the Freedom of Information Act." 28 C.F.R. § 513.60.[8] Nor has it petitioned for a rulemaking to amend this regulation.

Further, WLC's argument does not accurately reflect the current state of Bureau procedures. WLC is correct that, during the COVID-19 pandemic, the Bureau instituted an informal process that allowed attorneys to obtain expedited access to client medical records in support of motions for compassionate release and requests for home confinement. Br. 22. But as the agency's declaration explained, the Bureau is constantly evaluating its processes and looking for ways to "promote governmental transparency." Baime Decl. ¶¶ 9, 24 (JA64, 69-70). As part of those efforts, BOP recently created procedures through which attorneys could submit Privacy Act requests for client medical records. *See* 89 Fed. Reg. at 49,909. And unlike the information access system created during the pandemic, attorneys who utilize this Privacy

---

[8] As noted above, Bureau regulations create local access procedures for several categories of records, sparing incarcerated individuals from making FOIA requests for certain types of easily processed documents. *See* 28 C.F.R. §§ 513.40, 513.42, 513.43.

Act pathway can obtain access to medical records for any reason related to the attorney's representation. Thus, WLC is quite wrong to assert (Br. 23) that the Bureau selectively delays requests for records that might be used in litigation against it.

WLC's remaining arguments are no more substantial. It complains (Br. 25) that the Bureau's declaration contains "conclusory denials and platitudes." But as the district court recognized, "that is far from a complete and accurate description"—the agency's declarant "details the significant increase in information requests" the Bureau has recently received, "the efforts undertaken by BOP to meet its statutory FOIA obligations when faced with this increased workload and challenges related to the pandemic and staffing shortages, and the documented improvements in addressing FOIA processing delays." Op. 25-26 (JA178-79) (citing Baime Decl. ¶ 18-23 (JA67-69)). WLC contends (Br. 25-26) that the Bureau's statement that it is processing requests as quickly as it can given resources constraints and its current backlog is contradicted by evidence in the record. But the "evidence" WLC points to is its own opinion that the Bureau could process records more quickly if it did not apply FOIA and its exemptions, which require careful

44

review of requested records.  WLC's preference that the Bureau process

records outside of FOIA does not undermine the Bureau's showing of

how it diligently processes requests under FOIA.  Finally, WLC

attempts to minimize the Bureau's efforts at improvement because they

have not entirely eliminated delays or the agency's backlog.  But as

discussed above, the relevant test is whether the agency has

demonstrated "good faith effort and due diligence" in processing FOIA

requests.  The improvements described in the declaration (and those

made since the declaration was written) establish that the Bureau has

satisfied this standard.  The district court therefore correctly granted

summary judgment on WLC's policy-or-practice claim.

## II. The District Court Correctly Denied WLC's Motion for Discovery

WLC argued in district court that, because "summary judgment is

generally unwarranted before discovery," the Bureau had "prematurely

moved for summary judgment,"  Dkt. No. 17, at 21, 23 (JA115, 117), and

it asked the district court to the Bureau's motion and permit discovery

under Rule 56(d).  The district court plainly did not abuse its discretion

in denying the motion for discovery.  Op. 23-26 (JA176-79); *see Stewart*

*v. Evans*, 351 F.3d 1239, 1245 (D.C. Cir. 2003) (noting that this Court

reviews a decision to deny discovery "under an abuse of discretion standard").

"Generally speaking, discovery is rarely appropriate in FOIA cases, and the preferred approach, if possible, is to resolve the lawsuit without discovery and by summary judgment." *Pavement Coatings Tech. Council v. U.S. Geological Survey*, 995 F.3d 1014, 1024 (D.C. Cir. 2021) (citation omitted). Summary judgment is warranted if an agency declaration justifies its position with "reasonably specific detail" and its declaration is not "substantially called into question by contrary record evidence or evidence of agency bad faith." *Schaerr v. U.S. Dep't of Justice*, 69 F.4th 924, 929 (D.C. Cir. 2023) (quotation marks omitted). Where, as here, the defendant agency's submission is "sufficient to support the grant of summary judgment" to the agency, "there is no reason to permit discovery." *Meeropol v. Meese*, 790 F.2d 942, 961 (D.C. Cir. 1986). Indeed, even where an agency's declaration is inadequate, "the appropriate remedy is usually to allow the agency to 'submit further affidavits' rather than to order discovery." *Shapiro v. U.S. Dep't of Justice*, 40 F.4th 609, 615 (D.C. Cir. 2022) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995)). District

46

courts should order discovery "only where there is evidence—either at the affidavit stage or (in rarer cases) before—that the agency acted in bad faith." *Id.* (quotation marks omitted); *see also In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020).

The district court correctly held that WLC had failed to carry this burden. WLC does not argue that the Bureau has acted in bad faith. Rather, WLC asserts (Br. 33) that discovery is warranted to permit "adversarial testing" of a "self-serving affidavit." But that has never been enough to justify discovery in a FOIA case. *See, e.g.*, *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989) (explaining that a "desire to 'test and elaborate' affiants' testimony falls short"); *Military Audit Project v. Casey*, 656 F.2d 724, 751-52 (D.C. Cir. 1981) (holding that a district court properly denies discovery where the requester offers only a "bare hope of falling upon something that might impugn the affidavits"). WLC also states (Br. 30) that it seeks discovery to learn more about, for example, "how FOIA requests are functionally handled and prioritized on a day-to-day basis," and "the substance" of "FOIA 'trainings' and any guidance the agency provides to employees." But these topics were addressed in the

47

declaration.  And as the district court explained, just because "more may be learned" about a topic through discovery does not establish that "additional discovery is necessary to resolve FOIA litigation."  Op. 25 (JA178).

WLC contends (Br. 31-33) that the bad-faith requirement "does not apply to the policy or practice claim at issue in this case."  But this Court has framed the rule in terms of FOIA cases generally, *see, e.g.*, *Pavement Coatings*, 995 F.3d at 1024; *Shapiro*, 40 F.4th at 615; *In re Clinton*, 973 F.3d at 113, and WLC cites no authority that would support carving out this particular type of FOIA claim from all others.  Nor is there any reason to do so.  As this Court recently made clear, an agency's ultimate success on a policy-or-practice claim will turn on whether it can establish "good faith effort and due diligence" in responding to requests.  *Judicial Watch*, 895 F.3d at 783 (quoting *Open Am.*, 547 F.2d at 616).  In light of that standard, a requester will not be able to demonstrate that discovery is relevant and necessary without "evidence to support" an allegation of "bad faith behavior."  *Freedom Watch, Inc. v. National Sec. Agency*, 783 F.3d 1340, 1345 (D.C. Cir. 2015).  Because WLC did not make the required showing, Op. 26

48

(JA179), the district court was well within its discretion to deny the

request for discovery.

## CONCLUSION

For the foregoing reasons, the judgment of the district court

should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

MARK B. STERN

  */s/ Thomas Pulham*
THOMAS PULHAM
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7323*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4332*
  *thomas.pulham@usdoj.gov*

December 2024

49

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,551 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Thomas Pulham*
Thomas Pulham

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

*/s/ Thomas Pulham*
Thomas Pulham

**ADDENDUM**

# TABLE OF CONTENTS

5 U.S.C. § 552(a) (excerpts) ...................................................... A1

28 C.F.R. § 513.40 ..................................................................... A6

28 C.F.R. § 513.42 ..................................................................... A7

28 C.F.R. § 513.43 ..................................................................... A8

28 C.F.R. § 513.50 ..................................................................... A9

28 C.F.R. § 513.60 ................................................................... A10

**5 U.S.C. § 552(a) (excerpts)**

**§ 552. Public information; agency rules, opinions, orders, records, and proceedings.**

(a) Each agency shall make available to the public information as follows:

…

(3)(A) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

…

(6)(A) Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall—

(i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of—

(I) such determination and the reasons therefor;

(II) the right of such person to seek assistance from the FOIA Public Liaison of the agency; and

(III) in the case of an adverse determination—

(aa) the right of such person to appeal to the head of the agency, within a period determined by the head of the agency that is not less than 90 days after the date of such adverse determination; and

(bb) the right of such person to seek dispute resolution services from the FOIA Public Liaison of the agency or the Office of Government Information Services; and

(ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public

A1

holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

The 20-day period under clause (i) shall commence on the date on which the request is first received by the appropriate component of the agency, but in any event not later than ten days after the request is first received by any component of the agency that is designated in the agency's regulations under this section to receive requests under this section. The 20-day period shall not be tolled by the agency except—

> (I) that the agency may make one request to the requester for information and toll the 20-day period while it is awaiting such information that it has reasonably requested from the requester under this section; or

> (II) if necessary to clarify with the requester issues regarding fee assessment. In either case, the agency's receipt of the requester's response to the agency's request for information or clarification ends the tolling period.

(B)(i) In unusual circumstances as specified in this subparagraph, the time limits prescribed in either clause (i) or clause (ii) of subparagraph (A) may be extended by written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched. No such notice shall specify a date that would result in an extension for more than ten working days, except as provided in clause (ii) of this subparagraph.

(ii) With respect to a request for which a written notice under clause (i) extends the time limits prescribed under clause (i) of subparagraph (A), the agency shall notify the person making the request if the request cannot be processed within the time limit specified in that clause and shall provide the person an opportunity to limit the scope of the request so that it may be processed within that time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified

A2

request. To aid the requester, each agency shall make available its FOIA Public Liaison, who shall assist in the resolution of any disputes between the requester and the agency, and notify the requester of the right of the requester to seek dispute resolution services from the Office of Government Information Services. Refusal by the person to reasonably modify the request or arrange such an alternative time frame shall be considered as a factor in determining whether exceptional circumstances exist for purposes of subparagraph (C).

(iii) As used in this subparagraph, "unusual circumstances" means, but only to the extent reasonably necessary to the proper processing of the particular requests—

> (I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;

> (II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or

> (III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

(iv) Each agency may promulgate regulations, pursuant to notice and receipt of public comment, providing for the aggregation of certain requests by the same requestor, or by a group of requestors acting in concert, if the agency reasonably believes that such requests actually constitute a single request, which would otherwise satisfy the unusual circumstances specified in this subparagraph, and the requests involve clearly related matters. Multiple requests involving unrelated matters shall not be aggregated.

(C)(i) Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph. If the Government can show exceptional

circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records. Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request. Any notification of denial of any request for records under this subsection shall set forth the names and titles or positions of each person responsible for the denial of such request.

(ii) For purposes of this subparagraph, the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.

(iii) Refusal by a person to reasonably modify the scope of a request or arrange an alternative time frame for processing a request (or a modified request) under clause (ii) after being given an opportunity to do so by the agency to whom the person made the request shall be considered as a factor in determining whether exceptional circumstances exist for purposes of this subparagraph.

(D)(i) Each agency may promulgate regulations, pursuant to notice and receipt of public comment, providing for multitrack processing of requests for records based on the amount of work or time (or both) involved in processing requests.

(ii) Regulations under this subparagraph may provide a person making a request that does not qualify for the fastest multitrack processing an opportunity to limit the scope of the request in order to qualify for faster processing.

(iii) This subparagraph shall not be considered to affect the requirement under subparagraph (C) to exercise due diligence.

…

(F) In denying a request for records, in whole or in part, an agency shall make a reasonable effort to estimate the volume of any requested matter the provision of which is denied, and shall provide any such estimate to the person making the request, unless

providing such estimate would harm an interest protected by the exemption in subsection (b) pursuant to which the denial is made.

...

....

**28 C.F.R. § 513.40**

**§ 513.40.  Inmate access to Inmate Central File.**

Inmates are encouraged to use the simple access procedures described in this section to review disclosable records maintained in his or her Inmate Central File, rather than the FOIA procedures described in §§ 513.60 through 513.68 of this subpart. Disclosable records in the Inmate Central File include, but are not limited to, documents relating to the inmate's sentence, detainer, participation in Bureau programs such as the Inmate Financial Responsibility Program, classification data, parole information, mail, visits, property, conduct, work, release processing, and general correspondence. This information is available without filing a FOIA request. If any information is withheld from the inmate, staff will provide the inmate with a general description of that information and also will notify the inmate that he or she may file a FOIA request.

(a) Inmate review of his or her Inmate Central File. An inmate may at any time request to review all disclosable portions of his or her Inmate Central File by submitting a request to a staff member designated by the Warden. Staff are to acknowledge the request and schedule the inmate, as promptly as is practical, for a review of the file at a time which will not disrupt institution operations.

(b) Procedures for inmate review of his or her Inmate Central File.

   (1) Prior to the inmate's review of the file, staff are to remove the Privacy Folder which contains documents withheld from disclosure pursuant to § 513.32.

   (2) During the file review, the inmate is to be under direct and constant supervision by staff. The staff member monitoring the review shall enter the date of the inmate's file review on the Inmate Activity Record and initial the entry. Staff shall ask the inmate to initial the entry also, and if the inmate refuses to do so, shall enter a notation to that effect.

   (3) Staff shall advise the inmate if there are documents withheld from disclosure and, if so, shall advise the inmate of the inmate's right under the provisions of § 513.61 to make a FOIA request for the withheld documents.

**28 C.F.R. § 513.42**

**§ 513.42. Inmate access to medical records.**

(a) Except for the limitations of paragraphs (c) and (d) of this section, an inmate may review records from his or her medical file (including dental records) by submitting a request to a staff member designated by the Warden.

(b) Laboratory reports which contain only scientific testing results and which contain no staff evaluation or opinion (such as Standard Form 514A, Urinalysis) are ordinarily disclosable. Lab results of HIV testing may be reviewed by the inmate. However, an inmate may not retain a copy of his or her test results while the inmate is confined in a Bureau facility or a Community Corrections Center. A copy of an inmate's HIV test results may be forwarded to a third party outside the institution and chosen by the inmate, provided that the inmate gives written authorization for the disclosure.

(c) Medical records containing subjective evaluations and opinions of medical staff relating to the inmate's care and treatment will be provided to the inmate only after the staff review required by paragraph (d) of this section. These records include, but are not limited to, outpatient notes, consultation reports, narrative summaries or reports by a specialist, operative reports by the physician, summaries by specialists as the result of laboratory analysis, or in-patient progress reports.

(d) Prior to release to the inmate, records described in paragraph (c) of this section shall be reviewed by staff to determine if the release of this information would present a harm to either the inmate or other individuals. Any records determined not to present a harm will be released to the inmate at the conclusion of the review by staff. If any records are determined by staff not to be releasable based upon the presence of harm, the inmate will be so advised in writing and provided the address of the agency component to which the inmate may address a formal request for the withheld records. An accounting of any medical records will be maintained in the inmate's medical file.

**28 C.F.R. § 513.43**

**§ 513.43. Inmate access to certain Bureau Program Statements.**

Inmates are encouraged to use the simple local access procedures described in this section to review certain Bureau Program Statements, rather than the FOIA procedures described in §§ 513.60 through 513.68 of this subpart.

(a) For a current Bureau Program Statement containing rules (regulations published in the Federal Register and codified in 28 CFR), local access is available through the institution law library.

(b) For a current Bureau Program Statement not containing rules (regulations published in the Federal Register and codified in 28 CFR), inmates may request that it be placed in the institution law library. Placement of a requested Program Statement in the law library is within the discretion of the Warden, based upon local institution conditions.

(c) Inmates are responsible for the costs of making personal copies of any Program Statements maintained in the institution law library. For copies of Program Statements obtained under the FOIA procedures described in §§ 513.60 through 513.68 of this subpart, fees will be calculated in accordance with 28 CFR 16.10.

**28 C.F.R. § 513.50**

**§ 513.50. Privacy Act requests by inmates.**

Because inmate records are exempt from disclosure under the Privacy Act (see 28 CFR 16.97), inmate requests for records under the Privacy Act will be processed in accordance with the FOIA. See §§ 513.61 through 513.68.

**28 C.F.R. § 513.60**

**§ 513.60. Freedom of Information Act requests.**

Requests for any Bureau record (including Program Statements and Operations Memoranda) ordinarily shall be processed pursuant to the Freedom of Information Act, 5 U.S.C. 552. Such a request must be made in writing and addressed to the Director, Federal Bureau of Prisons, 320 First Street, NW., Washington, D.C. 20534. The requester shall clearly mark on the face of the letter and the envelope "FREEDOM OF INFORMATION REQUEST," and shall clearly describe the records sought. See §§ 513.61 through 513.63 for additional requirements.